1932

HOPE PETTY MOTORS OF COLUMBIA, INC., Respondent-Appellant v. C. Kenneth HYATT, Ken Hyatt AMC/Jeep, Renault, Inc., and Imperial Chrysler Plymouth, Inc., f/d/b/a Ken Hyatt Chrysler Plymouth, Defendants, of whom C. Kenneth Hyatt and Ken Hyatt AMC/Jeep, Renault, Inc., are Appellants-Respondents, and Imperial Chrysler Plymouth, Inc., f/d/b/a Ken Hyatt Chrysler Plymouth, is Respondent.

(425 S.E. (2d) 786)

Court of Appeals

172

*Randall M. Chastain,* Columbia, *for appellants-respondents.*

*Joseph Gregory Studemeyer,* Columbia, *for respondent-appellant.*

Heard Sept. 16, 1992; Decided Dec. 22, 1992.

Reh. Den. Feb. 3, 1993.

*Per Curiam:*

This is a contract action. C. Kenneth Hyatt, sole owner of Ken Hyatt AMC/Jeep, Renault, Inc., sold his dealership to Hope Petty Motors of Columbia, Inc., on December 28, 1987. Randolph W. Hope, Jr., negotiated the sale for Hope Petty. For two months prior to the sale's closing, Hope Petty managed the dealership under a management agreement. On July 26, 1989, Hope Petty brought suit against Hyatt AMC and against Hyatt personally, seeking payments which it claimed were due under the management agreement. A jury found against Hyatt AMC and Hyatt personally and awarded Hope Petty $60,588.[1] The judge remitted the damages to $54,000. He also denied Hope Petty's request for prejudgment interest. Hyatt and Hyatt AMC appeal, asserting that, as a matter of law, the jury could have awarded no more than $28,725 in damages under the management agreement. Hyatt appeals the jury's findings of personal liability. Hope Petty cross appeals the judge's denial of prejudgment interest. We affirm the verdicts against Hyatt AMC and Hyatt, and we reverse the judge's denial of prejudgment interest.

On October 2, 1987, Hope and Hyatt signed a contract in which Hope agreed to buy the assets of Hyatt AMC. The contract set November 1, 1987, as the closing date. Hope deposited $40,000 earnest money. The contract did not specify a sales price. The sale was contingent upon approval by the Chrysler Corporation.[2]

---

[1] The jury also found against Imperial Chrysler Plymouth, Inc., another car dealership owned by Hyatt, and awarded Hope Petty $11,589. Imperial does not appeal this verdict.

[2] Chrysler was in the process of purchasing American Motors Corporation when Hope and Hyatt AMC entered the purchase contract. Therefore, Chrysler, not American Motors, was responsible for deciding if Hope could purchase Hyatt's AMC dealership.

Because Chrysler did not approve the sale by November 1st and was not likely to approve it soon, Hope and Hyatt negotiated an interim management agreement on November 4, 1987, under which Hope Petty would take control of the dealership but would deal with the manufacturer through Hyatt AMC. Pursuant to the management agreement, Hope Petty agreed to purchase the assets of Hyatt AMC and to assume notes payable on all vehicles on the lot or ordered up to November 4, 1987. This agreement, unlike the first contract, specified a sales price of $680,000. To secure performance of the new agreement, Hope Petty deposited an additional $110,000 and agreed to escrow the remaining $530,000.

Between November 4th and December 28th, Hope Petty operated the dealership under the management agreement. Hope Petty managed the business and decided which new cars to order from the factory, but it ordered the cars on Hyatt AMC's dealership account. During this interim period, the factory credited or paid the Hyatt AMC account for "holdback," interest adjustments, inspection fees, rebates, finance reserve, and warranty repairs. When Hope Petty ordered a vehicle, the factory automatically retained approximately 2.5% of the invoice price as "holdback." It remitted these "holdback" amounts to Hyatt AMC the next quarter. For example, on a $15,000 vehicle, the factory withheld $300 which it either paid or credited to the dealer within the next 90 days. The factory also paid Hyatt AMC for interest accrued from the date the vehicle was ordered and paid for until it arrived on the lot. In addition, when the vehicle arrived, the factory credited the dealership account for inspecting and servicing it. The factory also offered customers rebates on some vehicles. Customers could either accept the rebate directly from the factory, or they could assign it to the dealer as partial payment for the vehicle. If the customer assigned the rebate, the factory would either pay or credit the dealership. Additionally, if the customer financed the vehicle, the lender gave a commission, known as finance reserve, to the dealership. Finally, the factory credited Hyatt AMC for warranty service work that Hope Petty performed during the interim period.

On December 23, 1987, Chrysler approved the dealership sale. On December 28th Hyatt and the Hope Petty investors met to close the sale. Before releasing the escrowed money,

the investors asked Hyatt to escrow $30,000 to cover income Hope Petty generated during the interim period but which the factory paid or credited to Hyatt AMC. Hyatt refused to escrow any of the purchase money. Hope Petty then asked Hyatt to sign a document that he would indemnify and hold harmless the purchasers against any and all debts and liabilities of Ken Hyatt and AMC/Jeep, Renault, Inc. Hyatt signed the document. Hope Petty claimed at trial this document is a personal guaranty.

On or before July 1, 1988, Hope Petty made demand for payment of nearly $51,000, including "holdback," interest adjustment, inspection fees, rebates, finance reserve and warranty receivables generated after November 4, 1987. Hyatt AMC and Hyatt did not pay the sum demanded and Hope Petty commenced this action.

## I.

Hyatt and Hyatt AMC first argue the management agreement limits Hope Petty's recovery to $28,725. They contend the agreement entitles them to "holdback" and interest adjustments generated after November 4, 1987. They concede Hope Petty is due payment for inspection fees, rebates, finance reserves and warranty repairs generated after that date.

Whether "holdback" on vehicles ordered from the factory by Hope, after November 4th belongs to Hope Petty or to Hyatt is not an issue preserved for appeal.[3] However, had it been preserved, we would find it without merit.

As a general rule, the construction of contracts is a question of law for the court. *Campbell v. Bi-Lo, Inc.,* 301 S.C. 448, 392 S.E. (2d) 477 (Ct. App. 1990). However, when a contract is ambiguous, determining what the parties intended becomes a question of fact for the jury. *Cafe Associates, Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E. (2d) 162

---

[3] Hyatt and Hyatt AMC failed to object to the judge's charge to the jury that it must determine what the parties intended "because these are questions of fact for you to determine." The failure to object to a jury instruction makes the charge the law of the case. *Mickle v. Blackmon,* 255 S.C. 136, 177 S.E. (2d) 548 (1970). Further, they did not move for a new trial on the ground the contract prohibited Hope Petty's recovery for "holdback" and interest adjustment. Therefore, this issue is not preserved for appeal. *New York Carpet World v. Houston,* 292 S.C. 101, 354 S.E. (2d) 924 (Ct. App. 1987).

(1991). In an action at law tried before a jury, the jurisdiction of the Court of Appeals extends merely to correcting errors of law, and the factual findings of the jury will not be disturbed unless the record discloses there is no evidence which reasonably supports the jury's findings. *Blanton v. Stokes Manufactured Homes, Inc.*, 293 S.C. 156, 359 S.E. (2d) 94 (Ct. App. 1987).

■ Here the management agreement provides that Hyatt AMC will retain as assets:

All contracts in transit, accounts receivable, factory receivables, finance receivables, notes receivable, cash value of life insurance, work in process, and used cars.

Hyatt and Hyatt AMC contend this provision entitles Hyatt AMC to "holdback" and interest adjustment on vehicles ordered up until December 28th, the closing date. They argue "holdback" constitutes a factory receivable or a finance receivable due to them on any vehicle ordered before the closing date. Hope Petty argues the agreement entitles Hyatt AMC to "holdback" and interest adjustment only on vehicles Hyatt AMC sold prior to November 4, 1987, the effective date of the management agreement. Hope Petty points to the following provision to support its position:

All income earned or losses incurred during the course and term of this contract shall be the sole benefit or obligation of [Hope Petty].

The jury could have reasonably concluded Hope Petty was entitled to all "holdback" and interest adjustments it generated after November 4th when it began operating the dealership. Hyatt admitted that if he retained the "holdback" and interest adjustments earned during the interim period he would receive more than the $680,000 purchase price specified in the management agreement. Further, Hyatt's witness testified Hope Petty was entitled to inspection fees, rebates and warranty claims, even though he characterized them as "factory receivables." In other words, the jury could reasonably find Hyatt's claim to factory receivables earned after November 4th was contrary to the terms of the management agreement. Because the record contains evidence which reasonably supports the jury's findings that Hope Petty is entitled to credits

and payments for "holdback" and interest adjustments after November 4th, we must affirm the verdict.

## II.

Hyatt next argues the court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict on the issue of whether the ancillary document he signed at closing constituted a personal guaranty. Hyatt contends (a) no evidence supports the inference that the document was a personal guaranty; and (b) even if the document were a personal guaranty, it is not enforceable for lack of consideration.

In reviewing the trial court's denial of a motion for a directed verdict or judgment notwithstanding the verdict, the evidence and all inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Smiley v. Woodmen of the World Life Insurance Society*, 249 S.C. 461, 154 S.E. (2d) 834 (1967).

## A.

Viewing the record in the light most favorable to Hope Petty, there is evidence from which a jury could reasonably infer the instrument was a personal guaranty. Hyatt AMC had already bound itself in the management agreement to perform all the obligations referred to in the instrument signed at closing. Thus, the latter document was duplicative of the former. If the disputed instrument bound Hyatt AMC, the corporation, not Hyatt personally, it would be meaningless as a practical matter, since it would be nothing more than an agreement of the corporation to do what it had already agreed to do. When an interpretation of a guaranty makes signing it a meaningless act, an alternative interpretation giving its terms practical effect will be accepted. *American Realty Trust v. The Chase Manhattan Bank, N.A.*, 222 Va. 392, 281 S.E. (2d) 825 (1981). There was evidence Hope Petty bargained to have Hyatt sign the instrument after he refused to escrow money to cover unpaid receivables Hyatt AMC owed to Hope Petty under the management agreement. The jury could infer from these facts that the agreement was intended to assure that Hyatt would stand good for these obligations if the corporation did not meet them. In return, Hope Petty would proceed with the closing, even though Hyatt

AMC had not performed all of its obligations under the management agreement on the date of closing.

In addition, when Hyatt previously signed the contract of sale and the management agreement, those documents expressly indicated he signed in his corporate capacity. On the instrument in dispute, however, his signature stands alone; there is no indication he signed as the president or owner of Hyatt AMC. Moreover, the document describes the duties it contains as duties of "the undersigned." Hyatt admitted he knew the difference between signing in a representative capacity and in an individual capacity. From this evidence, the jury could have reasonably concluded Hyatt signed the instrument in his personal capacity, making it a guaranty.

### B.

Hyatt also argues that if the document is a personal guaranty, it is unenforceable for want of consideration. He specifically contends that a guaranty made after the underlying obligation has been entered is invalid unless it is supported by new consideration.

A guaranty must be supported by sufficient legal consideration, either a benefit to the principal obligor or guarantor on the one hand, and some detriment to the obligee on the other. *Lowndes v. McCabe Fertilizer Co., et al.*, 157 S.C. 371, 154 S.E. 641 (1930). A mere promise to pay the debt of another without any consideration for such promise is void. *Id.*

The evidence viewed in the light most favorable to Hope Petty supports the jury's finding that the guaranty was supported by consideration. At the closing, the Hope Petty investors asked Hyatt to escrow enough money to ensure payment of the receivables. Hyatt admitted the corporation owed certain receivables to Hope Petty, but he refused to escrow any monies to secure their payment. As an alternative, Hope Petty asked Hyatt to sign the personal guaranty. This alternative benefitted Hyatt AMC, because Hope Petty could have demanded payment of the receivables at closing. Instead, it agreed to wait for the receivables until Hyatt AMC received them. An agreement by a creditor to extend the debtor's payment date is sufficient consideration for a guaranty by a third person. *Rice v. Harris*, 52 Ga. App. 42,

182 S.E. 404 (1935). Because Hyatt's guaranty benefitted Hyatt AMC and was a forbearance by Hope Petty, we find the guaranty was supported by consideration.

## III.

Hope Petty cross appeals the court's denial of prejudgment interest. It argues all claims against Hyatt AMC and Hyatt were liquidated by March 31, 1988. Hyatt AMC and Hyatt contend the claims were uncertain and disputed, and, therefore, the court correctly denied prejudgment interest.

If the sum owed is certain or capable of being reduced to certainty, prejudgment interest is allowed from the time when, by operation of law or agreement of the parties, payment was demandable. *Southern Welding Works, Inc. v. K & S Construction Co.*, 286 S.C. 158, 332 S.E. (2d) 102 (Ct. App. 1985). That the parties disputed which receivables were due to Hope Petty did not preclude an award of prejudgment interest. *Brooklyn Bridge, Inc. v. South Carolina Insurance Co.*, — S.C. —, 420 S.E. (2d) 511 (Ct. App. 1992); *see also Wayne Smith Construction Co. v. Wolman, Duberstein, and Thompson*, 294 S.C. 140, 363 S.E. (2d) 115 (Ct. App. 1987).

Although Hyatt AMC disputed exactly which receivables it owed Hope Petty, a Hyatt AMC witness admitted "holdback" and rebates could have been reduced to a certainty by March 31, 1988, when they had actually been received from the manufacturer. Hyatt AMC also admitted Hope Petty demanded payment of receivables due to it no later than July 1, 1988. Accordingly, we reverse the denial of prejudgment interest and remand for an award of prejudgment interest from July 1, 1988, on all amounts demandable as of the date of final judgment.[4]

Affirmed in part, reversed in part and remanded.

---

[4] Imperial, not Hyatt or Hyatt AMC, is liable for interest on the $11,589 for parts and services.