2005

Emil F. KUMPF, JR., Respondent v. UNITED TELEPHONE COMPANY OF THE CAROLINAS, INC., Appellant.

(429 S.E. (2d) 869)

Court of Appeals

534

*A. Parker Barnes, Jr.* of *A. Parker, Jr. & Associates*, Beaufort, *for appellant.*

*Paul H. Infinger* of *Dowling, Sanders, Dukes, Williams, Meeks, Infinger & Patterson*, Beaufort; and *James B. Richardson, Jr.* of *Svalina, Richardson & Smith*, Columbia, *for respondent.*

Heard March 15, 1993; Decided May 3, 1993.

Reh. Den. June 1, 1993.

CURETON, Judge:

Emil Kumpf, Jr., respondent, brought breach of contract action against United Telephone, appellant, asserting wrongful discharge in violation of provision set forth in United's employee handbook. The jury returned a verdict for Kumpf. United appeals. We affirm.

United Telephone Company hired Kumpf as a storeroom worker in 1970. He worked his way up to foreman of the Beaufort division warehouse. On February 10, 1983, Kumpf received a company booklet entitled "Your Special Duties" which referred to and was incorporated by reference into the Employee Handbook. The introduction of the booklet stated that its purpose was to explain company policy and admonished that failure to comply with the duties described may result in company disciplinary measures. The Handbook provided for a multistep disciplinary process.

Kumpf's employment of sixteen years was terminated on July 21, 1986 by United for the alleged violation of a provision of the "Your Special Duties" booklet which proscribes employee conflicts of interest. The applicable portion of this provision reads as follows:

> You may not accept any gifts or extraordinary entertainment or any other personal favor from any person or organization that is a supplier of materials or services, or from anyone seeking to become a supplier or with anyone likely to have business dealings with the Company, *that may appear to influence a decision by you.* (Emphasis added.)

After receiving a letter alleging conflicts of interests in the Beaufort office, United launched an investigation. The investigation revealed that United's South Carolina manager, Mike Morrison, was improperly in business with H & M Telephone Company, one of United's suppliers.

During the course of this investigation, many United employees were questioned about their knowledge of the relationship between Morrison and H & M. While being questioned, Kumpf admitted that he received a $75.00 check from H & M on December 24, 1985 as a Christmas present. He also stated that he distributed bottles of liquor provided by H & M to other supervisors within the company and kept one of the bottles for himself. Kumpf was discharged because of this action.

## I.

United contends that no employment contract was established between Kumpf and United because the Handbook and booklet did not explicitly or impliedly alter the at-will employment relationship. While the doctrine of termination at will is the law in this state, the Supreme Court in *Small v. Springs Industries, Inc.*, 292 S.C. 481, 186, 357 S.E. (2d) 452, 455 (1987), held that a jury can consider an employee handbook in deciding whether the employer and the employee had a limiting agreement on the employee's at-will employment status. See *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 224, 337 S.E. (2d) 213, 216 (1985).

Under the common law, a trial court should submit to the jury the issue of the existence of a contract when its existence is questioned and the evidence is either conflicting or admits of more than one inference. *Small*, 357 S.E. (2d) at 454. Whether United's Handbook and accompanying pamphlet constituted an employment contract was a question for the jury. At the very least, the terms of the employment handbook raised a factual question as to whether contractual rights were established between Kumpf and United where the manual contained personnel policies that provided for termination only under specified and defined conditions, and the manual set forth the procedure to be followed in terminating employees. The jury obviously determined that a contract was established and that Kumpf's actions did not constitute a conflict of interest. We will not disturb a factual finding made by the jury unless there is no evidence in the record which reasonably supports the jury's finding. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

There is sufficient evidence in the record to support the jury's finding that United's "Your Special Duties" booklet altered the otherwise at-will employment relationship. United's promulgation of policies detailing the reasons for and mechanics of discharging employees prevents it from discharging such employees without compliance with the stated policies. "Having announced the policy, presumably with the view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory." *Small* 357 S.E. (2d) at 454. (citing *Toussaint v. Blue Cross & Blue Shield of Michi-*

*gan*, 408 Mich. 579, 619, 292 N.W. (2d) 880, 895 (1980)). If United had desired, it could have established a company policy of requiring prospective employees to expressly acknowledge that they serve at the will of the company, and, thus, could have avoided the misunderstandings created by the promulgation of the instant policy. *Id.*

## II.

United alleges that if any alteration of the at-will status could be implied, such alteration had been properly disclaimed by language contained in the handbook. In *Small* the court stated that an employer who wishes to issue handbooks as nonbinding, purely advisory statements must insert a conspicuous disclaimer into the written document. *Id.* 357 S.E. (2d) at 455.

In *Small,* the Supreme Court did not define conspicuous. Therefore, we must look to other areas of the law for a meaningful definition. South Carolina's version of the Uniform Commercial Code (UCC) defines conspicuous as follows:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . .

S.C. Code Ann. § 36-1-201(10) (1976). Although this court recognizes that the UCC is not applicable to this case, it provides guidance in determining whether the disclaimer in the manual issued by United is conspicuous.

Furthermore, in *South Carolina Electric & Gas Co. v. Combustion Engineering, Inc.*, 283 S.C. 182, 186, 322 S.E. (2d) 453, 456 (S.C. App. 1984), this court found that a disclaimer, indistinct as to color and type and located on the seventeenth page of a twenty-two page document was not conspicuous. Compare, *Marr v. City of Columbia*, — S.C. —, 416 S.E. (2d) 615 (1992) (conspicuousness found where disclaimer placed in large letters on the front cover of employee handbook, and then reiterated in large bold type on a separate page of the handbook); *Johnson v. First Carolina Financial Corp.*, 305 S.C. 556, 558, 409 S.E. (2d) 804, 805 (Ct. App. 1991) (disclaimer

found to be conspicuous where there were statements in two places in body of a handbook declaring the at-will status of employees, plus a capitalized statement at the end of the handbook requiring employees to confirm they understood the handbook did not create an express or implied contract). Like in *South Carolina Electric & Gas Co. v. Combustion Engineering, Inc.*, the disclaimer here was located on the last page of the document under the heading "CONCLUSION." It was neither capitalized, bolded, set apart with distinctive border, or in contrasting type or color. Thus, it was inconspicuous and ineffective.

## III.

Assuming a contract of employment was found to exist, United next alleges that there is no evidence of a breach of the contract. Asserting that the provision under which Kumpf was terminated was unambiguous, United moved for a directed verdict. However, where the evidence is conflicting or admits of more than one inference, its resolution is for the jury. *Small*, 357 S.E. (2d) at 454. The provision at issue did not prohibit all acceptances of gifts from suppliers. It only prohibited those gifts which may appear to influence a decision by the employee. Many United employees testified, but none assigned the same meaning to this provision. The trial judge properly denied United's directed verdict motion.

## IV.

After Kumpf was discharged United changed its policy from a ban on accepting gifts that "may appear to influence a decision by you" to a total ban on vendors giving gifts under any circumstance. However, United did not modify the employee handbook.[1] United contends that it was prejudicial error to allow evidence of this change in policy. At trial the objection was only to the relevance of this evidence. On appeal, United analogizes its subsequent prohibition against vendors giving gifts to post-accident remediation in negligence cases.

---

[1] This new policy provision was directed to contractors who did business with United.

This analogy is inapposite. It is the policy of the law to exclude evidence of postaccident remediation so as to encourage tortfeasors to remedy dangerous situations, postaccident, without fear that the remedy will be used against them. *Whelan v. Masonite Corporation*, 304 S.C. 548, 405 S.E. (2d) 836 (1991). This rule excludes testimony of postaccident remediation from being evidence of negligence. This is not a negligence case and those concerns are not at issue.

In order for testimony to be admissible there must be a logical or rational connection between the fact which is sought to be presented and a matter of fact which has been made an issue in the case. *Gause v. Livingston*, 251 S.C. 8, 159 S.E. (2d) 604 (1968). The trial judge ruled that the letter admitted in this case was relevant to the issue of ambiguity of the conflict of interest provision. The admission of evidence is a matter addressed to the sound discretion of the trial judge and absent clear abuse of discretion amounting to an error of law, the lower court's ruling will not be disturbed on appeal. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989). The lower court did not abuse its discretion in admitting the letter.

## V.

Finally, United contends that it was prejudicial error to exclude evidence that United planned to close its Beaufort warehouse in 1991. United's contention is that Kumpf's employment would have, in any event, terminated in 1991. This contention relates to damages not to the wrongfulness of Kumpf's discharge. However, United proffered no evidence which demonstrated a mitigation of damages due to adjustments in the damage calculation because of the possible closing of the Beaufort warehouse in 1991. It was incumbent upon United to show what difference early retirement in 1991 would have made to the damage calculation. See *Alala v. Peachtree Plantations, Inc.*, 292 S.C. 160, 355 S.E. (2d) 286, 290 (1987) ("A party who claims damages should have been minimized has the burden of proving they could have reasonably been avoided or reduced.").

For the reasons stated, the judgment is

Affirmed.

GOOLSBY, J., concurs, and LITTLEJOHN, A.J., concurs and dissents in separate opinion.

LITTLEJOHN, Associate Judge:

I concur with the majority's holding that the evidence supported the jury's finding that United's "Your Special Duties" booklet altered Kumpf's otherwise at-will employment status, under *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E. (2d) 452 (1987). I also concur with the majority that the disclaimer in the booklet was not conspicuous.

However, I respectfully dissent from that part of the majority's decision which affirms the trial judge's denial of United's directed verdict motion. I would hold that the "conflicts of interest" clause was unambiguous, and, without dispute, Kumpf violated the clause.

The clause provided, in pertinent part:

> You may not accept any gifts or extraordinary entertainment or any other personal favor from any person or organization that is a supplier of materials or services, or from anyone seeking to become a supplier or with anyone likely to have business dealings with the Company, **that may appear to influence a decision by you**. (Emphasis added.)

Generally, the construction of contracts is a question of law for the court. *Hope Petty Motors v. Hyatt*, 425 S.E. (2d) 786 (S.C. Ct. App. 1992). Determining what the parties intended becomes a question of fact for the jury only when the contract is ambiguous. *Id.* Furthermore, if a contract is unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms. *Bates v. Lewis*, 427 S.E. (2d) 907, 909 footnote 1. (S.C. Ct. App. 1993).

In *Jordan v. Security Group, Inc.*, 428 S.E. (2d) 705 (S.C. Sup. Ct. 1993), the Supreme Court stated:

> A contract is ambiguous only when it may fairly and reasonable be understood in more ways than one. Where the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect.

\*   \*   \*   \*   \*   \*

Resort to construction by a party is only done when the contract is ambiguous or there is doubt as to its intended meaning.

\*   \*   \*   \*   \*   \*

The Court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully.

*Id.* at 707 (citations omitted).

I would hold that the clause cannot be fairly and reasonably understood in more ways than one. The contract prohibited accepting gifts from suppliers or anyone likely to have business dealings with the company where that gift "**may appear** to influence a decision by you." (Emphasis added.) This language unambiguously precluded an employee, such as Kumpf, from giving even the appearance that a gift he received from someone who has business dealings with United could influence a decision the employee makes. We, as lawyers and judges, understand this concept all too well—it is one of the guiding principles of our profession. I would hold the clause was unambiguous, and its construction was a matter for the trial judge, not the jury.

I would also hold that there was no factual issue over whether Kumpf violated the clause. It was not disputed that H & M Telephone Company was a "supplier of services" to United and was "likely to have business dealings" with United in the future. It was also undisputed that Ronald Hale, representing H & M, gave Kumpf a check for $75.00 and over a case of liquor, and that Kumpf cashed the check, kept one bottle of liquor and distributed the rest of the bottles of liquor to other United supervisors. In this case, the "appearances" were:

> —that Kumpf had discretion to contact Hale regarding any location which needed a pay phone, or could have contacted another contractor;
> —that Kumpf was in a position to record (or not record) supplies Hale received for each job, so as to have control over whether Hale would be billed for supplies he received;
> —that Kumpf was in a position to approve Hale's work.

that is, to "sign off on it," so that without Kumpf's word, Hale could not get paid (the "appearance" being that even if Hale did a substandard or incomplete job, Kumpf could control whether Hale got paid);

—that Kumpf "fussed" over the price Hale charged United resulting in a reduction in that price, and that Hale subsequently paid Kumpf off to keep Kumpf from continued "fussing" over the Hale's price.

None of these things may ever have actually occurred, and Kumpf may never have actually strayed from honesty. But the prohibition involved "appearances," which meant as much to United as reality. A casual observer would not know whether Kumpf in fact had influence on decisions made with respect to Hale—apparently, Hale was not certain whether Kumpf could influence decisions, but he must have speculated as much since he singled Kumpf out as one of a few people to receive a "gift."

I also attach no significance to the fact that United did not fire several other employees who accepted gifts from Hale, although United did fire Kumpf. The fact that many people were breaking the rules does not mean that when you catch one crook you should let him go. Additionally, I note that Kumpf himself testified to his initial reluctance to accept Hale's gift, and his inquiry of his supervisor, Douglas Keesee, who told him "Let your conscience be your guide."

Accordingly, I would reverse the trial judge's failure to direct a verdict for United on the grounds that the clause was unambiguous, Kumpf indisputably violated the prohibition, and United's termination of him did not breach the contract, as a matter of law.