PREHEARING REPORT

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
REA Construction
Company,        Respondent,
 
 
 

v. 

 
 
 
Columbia Country
Club,        Appellant.
 
 
 

Appeal from Richland County
Joseph M. Strickland, Master-in-Equity 

Unpublished Opinion No. 2004-UP-188
Submitted November 3, 2003  Filed March 
 22, 2004

AFFIRMED

 
 
 
Richard D. Ries and John S. Nichols, both of Columbia, for 
 Appellant.
James Coffas and James D. Cooper, Jr., both of Columbia, for 
 Respondent.
 
 
 

PER CURIAM:  In this contract case, REA 
 Construction Company (REA) sued Columbia Country Club (Country Club) for 
 the remaining balance due on a construction contract, plus interest and attorneys 
 fees.  The master-in-equity granted judgment to REA, finding Country Club owed 
 REA a total of $135,221.55.  Country Club appeals, arguing: 1) the contract 
 was ambiguous as to whether it was a unit price contract; 2) even assuming the 
 contract was not ambiguous, the contract was orally modified into a fixed price 
 contract; 3) Country Club was not bound by the portions of the contract requiring 
 it to pay interest on past due amounts and attorneys fees connected with the 
 collection of past due amounts; and 4) REA breached the implied covenant of 
 good faith and fair dealing.  We affirm.
FACTUAL/PROCEDURAL BACKGROUND
In 1998, Country Club solicited bids for 
 a construction project that entailed resurfacing a parking lot, repairing cart 
 paths along a golf course, and completing miscellaneous work to other areas 
 of its business.  
Although REA faxed its proposal to Country 
 Club in July of 1998, Country Clubs board of directors did not approve the 
 project for more than a year.  
On August 11, 1999, Don Litchford, a member of 
 Country Clubs board of directors, signed the Proposal and Contract Form (the 
 contract) on behalf of Country Club.  William Rosengarten, a commercial manager 
 for REA, signed the contract on REAs behalf. 
The contract provided prices for various units 
 of work to be performed and listed $135,182.50 as the estimated price for the 
 total project. The contract also contained provisions authorizing REA to collect 
 interest on past due amounts and attorneys fees. 
 After the parties signed the contract, Ray Ross, 
 Country Clubs representative on the project, met with Tim Metz, an employee 
 of REA, to discuss the scope of work to be completed pursuant to the contract.   

When the work on the project was finished, 
 REA sent a final bill in the amount of $208,406.94.  Country Club made a payment 
 to REA in the amount of $117,407.50, but refused to make additional payments.  

REA commenced this action on October 11, 2000, 
 alleging Country Club breached the contract.  As damages, REA sought the difference 
 between the amount of the final bill and the amount paid by Country Club, as 
 well as interest on the outstanding balance and attorneys fees.  Country Club 
 answered, denying the breach of contract claim, and counterclaimed for breach 
 of the covenant of good faith and fair dealing, negligence, and unfair trade 
 practices pursuant to the South Carolina Unfair Trade Practices Act. [1]   
In an order dated July 25, 2002, the master 
 found the parties entered into a valid unit price contract, and Country Club 
 had breached that contract by refusing to pay the invoice amount.  Accordingly, 
 REA was awarded a judgment against Country Club for $135,221.55, which consisted 
 of the remainder of the amount billed, plus interest and attorneys fees.  Country 
 Club appeals.
STANDARD OF REVIEW
An action to construe a contract is an 
 action at law.  Pruitt v. South Carolina Med. Malpractice Liab. Joint Underwriting 
 Assoc., 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001).  In an action at 
 law, the appellate court will correct any error of law, but it must affirm the 
 masters factual findings unless there is no evidence that reasonably supports 
 those findings.  Sea Cabins on the Ocean IV Homeowners Assn v. City of N. 
 Myrtle Beach, 337 S.C. 380, 388, 523 S.E.2d 193, 197 (Ct. App. 1999).
LAW/ANALYSIS
I.          Ambiguous 
 Contract
Country Club argues the master erred by finding 
 the contract was not ambiguous as to whether it was a unit price contract.  
 We disagree.
If a contract is clear on its face and reasonably 
 susceptible to only one interpretation, it is not ambiguous.  Padgett v. 
 South Carolina Ins. Reserve Fund, 340 S.C. 250, 254, 531 S.E.2d 305, 307 
 (Ct. App. 2000).  Conversely, [a] contract is ambiguous when the terms of the 
 contract are reasonably susceptible of more than one interpretation.  South 
 Carolina Dept. of Natural Res. v. Town of McClellanville, 345 S.C. 617, 
 623, 550 S.E.2d 299, 302 (2001).  When the language of the contract is ambiguous, 
 parol evidence is allowed to determine the intent of the parties.  Southern 
 Atlantic Fin. Servs. v. Middleton, 349 S.C. 77, 81, 562 S.E.2d 482, 484-85 
 (Ct. App. 2002).  
The determination of whether the language of a 
 contract is ambiguous is a question of law.  McClellanville, 345 S.C. 
 at 623, 550 S.E.2d at 302-03.
 Initially, we note, Country Club does not deny 
 the contract is clear on its face.  The front page of the contract stated the 
 price was estimated and the contract was a unit price contract. 
Instead, Country Club argues these two terms, estimated 
 and unit price contract, each have more than one reasonable meaning, rendering 
 the contract ambiguous.  Specifically, Country Club argues these words in the 
 contract could mean REA was only allowed to charge the estimated amount, and 
 any additional work authorized by Country Club would be billed at a unit price.  
 The master disagreed with this argument, as do we.
The meaning proposed by Country Club for the term 
 estimated would render the term meaningless.  Further, nothing in the contract 
 required REA to seek Country Clubs approval to exceed the estimated total listed 
 on the front page of the contract.  
Additionally, as to the term unit price contract, 
 the attachment to the contract outlined estimated expenditures.  For each type 
 of work to be performed, a subsection provided the price per unit, the estimated 
 number of units to be used, and the estimated total price for that subsection. [2]   A statement on the front page of the contract instructed measurements 
 to be taken to determine the total amount to charge for the work performed pursuant 
 to the contract.  Further, the contract contained no language suggesting the 
 estimated number of units could only be increased if Country Club authorized 
 additional work.
We conclude the master correctly held the contract 
 was not ambiguous.  Therefore, the master did not err in deciding the contract 
 was a unit price contract. [3]   Id. at 623, 550 S.E.2d at 302-03 (It 
 is a question of law for the court whether the language of a contract is ambiguous.).
II.      Oral Modification
Country Club argues even assuming the contract originally 
 was a unit price contract, the master erred by failing to find the contract 
 was orally modified into a fixed price contract.  We disagree.
After the contract was signed, Ross, Country Clubs 
 representative on the project, and Metz, an employee of REA, discussed modifications 
 to the contract.  Ross testified Country Club wanted to increase the size of 
 a parking lot, as well as add parking-lot islands and several man-hole covers.  
 He also testified Country Club had decided against installing several cart paths.  
 According to Ross, these changes would result in a total cost of $121,000.00 
 for the project.  Ross testified Metz agreed with Ross that the price of the 
 project was to remain within Country Clubs $121,000.00 budget.  Based on this 
 conversation between Ross and Metz, Country Club argues the unit price contract 
 was modified into a fixed price contract.
Generally, a written contract may be orally 
 modified.  Roberts v. Gaskins, 327 S.C. 478, 483, 486 S.E.2d 771, 773 
 (Ct. App. 1997).  Any modification of a written contract must satisfy all requisites 
 of a valid contract.  Player v. Chandler, 299 S.C. 101, 104, 382 S.E.2d 
 891, 893 (1989).  However, a person who enters into a contract on behalf of 
 a company must have authority to do so for the contract to be valid.  Pee 
 Dee Nursing Home v. Florence Gen. Hosp., 309 S.C. 80, 81-85, 419 S.E.2d 
 834, 835-37 (Ct. App. 1992).  
The master found no evidence to suggest Metz had 
 the authority to negotiate contracts on behalf of REA and concluded these discussions 
 between Ross and Metz did not result in a valid contract modification. 
The record supports this conclusion.  Ross testified 
 he assumed Metz was the project manager for REA, but that Metz did not make 
 such a representation.  Ross also testified he, not REA, had given Metz a copy 
 of the contract. 
Because the evidence supports the masters conclusion 
 that there was no modification of the written contract, we hold the master did 
 not abuse its discretion.  
Country Club also contends 
 that because the testimony of Litchford and Ross as to the modification was 
 not contradicted by REA, the master erred by failing to rule the contract had 
 been modified.  However, the trier of fact is not required to accept uncontradicted 
 testimony as true.  Black v. Hodge, 306 S.C. 196, 198, 410 S.E.2d 595, 
 596 (Ct. App. 1991).  Therefore, the master did not err by ruling against Country 
 Club on this issue.   
III.           
 Contract Provisions Concerning Interest and Attorneys Fees
Country Club argues there is no evidence in the record 
 from which the master could have concluded Country Club agreed to be bound by 
 the portions of the contract requiring it to pay interest on past due amounts 
 and attorneys fees connected with the collection of past due amounts.  We disagree.
A person signing a document is responsible for reading 
 the document and making sure of its contents. Every contracting party owes a 
 duty to the other party to the contract and to the public to learn the contents 
 of a document before he signs it.  Regions Bank v. Schmauch, 354 S.C. 
 648, 663, 582 S.E.2d 432, 440 (Ct. App. 2003); see Munoz v. Green 
 Tree Fin. Corp., 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001) ([A] person 
 who can read is bound to read an agreement before signing it.).  
Although Litchford admits signing the contract 
 on behalf of Country Club, Litchford testified that he did not read the General 
 Terms and Conditions section, the section relating to interest and attorneys 
 fees.  Because Litchford failed to read this section of the contract, Country 
 Club argues it should not be required to pay interest or attorneys fees.
Litchfords signature is located on the front page 
 of the contract.  Above Litchfords signature, there is a provision that states 
 [REA] propose[s] to furnish all the necessary supervision, labor, equipment 
 and materials required to complete the following work as outlined below, subject 
 to terms and conditions stated below and on reverse side hereof and incorporated 
 as part of this proposal. (emphasis added).  
The General Terms and Conditions section is located 
 on the back of the first page of the contract.  One of its subsections authorizes 
 REA to collect interest on past due accounts, while another subsection allows 
 REA to recoup attorneys fees related to the collection of past due amounts.  

Because Litchford acknowledged 
 signing the contract, the master did not err by concluding Country Club was 
 bound by the General Terms & Conditions section of the contract.  
Country Club also argues 
 the General Terms & Conditions section of the contract was not conspicuous, 
 and as such, Country Club should not be bound by it.  To support this proposition, 
 Country Club relies on Kumpf v. United Tel. Co. of Carolinas, 311 S.C. 
 533, 429 S.E.2d 869 (Ct. App. 1993).  
In Kumpf, this court 
 was confronted with the task of determining whether a contract disclaimer in 
 an employee handbook was sufficiently conspicuous to assure the promises in 
 the handbook were nonbinding.  Id. at 537, 429 S.E.2d at 872.  To assist 
 in its determination, this Court looked to the South Carolina Uniform Commercial 
 Code (UCC) for guidance as to the definition of conspicuous.  Id.   

In Kumpf, we did 
 not hold all contract provisions must be conspicuous, and we decline to do so 
 now.  Further, because Kumpf does not discuss contract provisions concerning 
 interest or attorneys fees, and we have found no South Carolina cases specifically 
 requiring contract provisions regarding interest or attorneys fees to be conspicuous, 
 we hold there is no requirement that these provisions be conspicuous.  Thus, 
 Country Clubs argument is without merit.
IV.          Implied Covenant of Good Faith and 
 Fair Dealing
Country Club argues REAs 
 failure to obtain approval before increasing the price of the project was a 
 breach of the implied covenant of good faith and fair dealing.  We disagree.
[T]here exists in every 
 contract an implied covenant of good faith and fair dealing.  Commercial 
 Credit Corp. v. Nelson Motors, 247 S.C. 360, 367, 147 S.E.2d 481, 484 (1966).  
 However, there is no breach of an implied covenant of good faith where a party 
 to a contract has done what provisions of the contract expressly gave him the 
 right to do.  Adams v. G.J. Creel & Sons, 320 S.C. 274, 277, 465 
 S.E.2d 84, 85 (1995). 
Because we have concluded 
 the master was correct in finding the parties entered into an unambiguous unit 
 price contract and Country Club was bound by it, there is no evidence to support 
 bad faith on the part of REA.  
The attachment to the contract 
 outlined estimated expenditures.  For each type of work to be performed, a subsection 
 provided the price per unit, the estimated number of units to be used, and the 
 estimated total price for that subsection.  Both the number of units and the 
 total price for the subsection were labeled as estimates.  Although REA increased 
 the number of units used in the project and this increase in units was reflected 
 in the final bill, the unit price did not increase.  Because only estimated 
 terms increased, REA performed according to the contract.  Therefore, the master 
 did not err by finding that REA did not breach the implied covenant of good 
 faith and fair dealing.
CONCLUSION
For the foregoing 
 reasons, the masters decisions are
AFFIRMED.
HEARN, C.J., HOWARD, and KITTREDGE, JJ., concurring.

 
 
 [1] The master found Country Club failed to prove its claims for negligence 
 and unfair trade practices.  These rulings are not appealed.

 
 
 [2] Under the heading Resurfacing Lot and Related Work, for example, 
 the price for the parking lot resurfacing was shown as $36.00 per ton. We 
 estimated 12.070 square yards.  This yields approximately 1,000 
 tons.  Subtotal estimated price = $36,000.00.   (emphasis added). 
 

 
 
 [3] Country Club further argues both parties intended a fixed price contract, 
 and thus, the contract should be reformed.  Because Rosengarten signed the 
 contract on behalf of REA, and Rosengarten testified REA intended to create 
 a unit price contract, there is evidence that reasonably supports the masters 
 implicit decision that there was no mutual mistake as to the type of contract 
 entered into by the parties.  See Crosby v. Protective Life Ins. 
 Co., 293 S.C. 203, 206, 359 S.E.2d 298, 300 (Ct. App. 1987) (A contract 
 may be reformed on the ground of mistake when the mistake is mutual. . . . 
 A mistake is mutual where both parties intended a certain thing and by mistake 
 in the drafting did not obtain what was intended.).