756 S.E.2d 155

**Willie D. WATSON, Appellant,**

**v.**

**Nancy Carol UNDERWOOD, individually and as putative trustee of the Willie D. Watson Trust; John H. Watson, individually and as putative trustee of the Willie D. Watson Trust; and Future and Potential Heirs for Willie D. Watson, Respondents.**

Appellate Case No. 2012–211966.

No. 5206.

Court of Appeals of South Carolina.

Heard Oct. 8, 2013.

Decided March 19, 2014.

444

446

Edward S. McCallum, III, of Law Offices of Edward S. McCallum, III, of Greenwood, and Thomas Jefferson Goodwyn, Jr., of Goodwyn Law Firm, LLC, of Columbia, for Appellant.

B. Michael Brackett, of Moses & Brackett, PC, of Columbia, for Respondents.

KONDUROS, J.

Willie D. Watson appeals the circuit court's grant of partial summary judgment finding her daughter, Nancy Carole Underwood, as Watson's attorney-in-fact, had the authority to create and fund an irrevocable trust with Watson's assets. We affirm.

**FACTS/PROCEDURAL HISTORY**

Watson and John Calvin Watson were married for sixty-two years and had three children: Underwood, John H. Watson, and Sherry Long. On October 4, 2006, Watson[1] filed a complaint with the sheriff's department that Long had been harassing her for years and on September 28, 2006, began to yell at her and call her names. She further reported that Long had assaulted her in the past by throwing objects at her. Watson told her attorney, Richard T. Townsend, she did not wish to leave her husband or Long anything in her will. Watson told Townsend, Underwood, and John H. that Long encouraged and supported Watson's husband's mental abuse

---

1. Watson was eighty-eight years old at the time of the incident.

towards Watson, physically abused Watson, and only wanted Watson's money.

On October 5, 2006, Watson granted Underwood a durable power of attorney. The power of attorney gave Underwood the power "[t]o establish trust funds, revocable or irrevocable, funded or unfunded, for the benefit of [Watson], [her] spouse, [her] children and [her] lineal descendants, and to transfer any of [her] assets to such trusts." It also provided Underwood could transfer any of Watson's assets to her "spouse, [her] children and [her] lineal descendants by gift, including to any such person serving as attorney[-]in[-]fact, or to any trust funds which [she] may have established, revocable or irrevocable. . . ." The power of attorney provided mental incapacity or physical disability by Watson would not effect it.

On the same day, Watson executed a last will and testament. She devised $2,000 to each of her grandchildren and $1,000 to each of her great-grandchildren living at the time of her death. She bequeathed her husband and Long [2] $1 each.[3]

Underwood and John H. were devised the residuary to be split equally. Both the will and the power of attorney were prepared by Townsend.

On March 13, 2009, during the night, Long moved Watson out of the assisted living facility [4] where she resided, Sterling House, without notifying Underwood or John H. On March 31, 2009, Watson's husband died, and Long later withdrew funds from his bank account with his power of attorney, withholding from the bank that he had died. The account was payable to Watson on her husband's death. In mid-March 2009, Underwood, John H., and their spouses visited Townsend's office to discuss how to protect Watson's assets from Long. Watson

---

2. Watson noted in the will that she had made "many advancements" to Long. She had previously gifted Long half of an acre, which was located in the middle of twenty-seven acres Watson owned. Watson informed Townsend she wished to undo the gift but her attorney advised her that she could not. She also told him Long would be inheriting the bulk of Watson's husband's estate.

3. At her attorney's urging, she devised them $1 instead of leaving them out entirely as she had done under her previous will.

4. In July 2008, Watson had a stroke. Her doctor believed she could not live independently and needed twenty-four-hour supervision.

had complained to Townsend numerous times about Long's abusiveness and desire for her money.[5] Townsend recommended an irrevocable trust be created and Watson's assets be transferred into the trust. On April 2, 2009, Underwood executed an irrevocable trust naming herself and John H. as co-trustees. Watson received all net income and principal necessary for her upkeep, maintenance, and support from the trust, and at her death, the trust would terminate and the assets were to be distributed in accordance with her will dated October 5, 2006. The trust was funded with three bank accounts[6], a car, and real property consisting of the approximately 26.5 acres Watson owned, upon which her house was located. According to Underwood, Watson initially approved of the trust.

On June 18, 2009, Long moved Watson out of an assisted living facility, Generations, where Watson had been living for about a month. Also that day, Watson revoked Underwood's power of attorney. On January 12, 2010, Watson executed a codicil to the 2006 will, naming Long as the sole beneficiary of the will. On January 26, 2010, Watson filed an action against Underwood and John H., as individuals and trustees, as well as her future and potential heirs of the trust (collectively, Respondents), challenging the validity and funding of the trust. Underwood and John H. answered on February 16, 2010. On April 29, 2010, Watson filed a petition[7] to terminate the trust under section 62–7–411 of the South Carolina Code, contending she, as the lifetime beneficiary of the trust, and the residuary beneficiary, Long, consented to its termination. Respondents filed a return with supporting affidavits and a deposition of Townsend. Following a hearing, the circuit court denied the petition on October 1, 2010. The circuit court found "(1) the codicil could not serve as a document incorporated by reference into the trust;" (2) the codicil, as Watson

---

5. Townsend testified Watson was scared of Long.

6. Two of the accounts were in Watson's name. The third account contained approximately $50,000 and was in John H.'s name and possibly Underwood's too.

7. The pleading appeared under the caption of the original complaint and was not accompanied by a summons. Thus, the circuit court treated the pleading as a motion.

attempts to use it, is a modification of the trust, which requires the consent of all trust beneficiaries; and "(3) the effective date of the codicil does not relate back to the time of the execution of the annexed October 5, 2006 will, rather the annexed will advances to become effective as of the time of the execution of the codicil." Watson filed a motion to reconsider, which was also denied.

Respondents filed a motion for partial summary judgment on the issue of whether the power to create an irrevocable trust may be expressly granted and delegated by a competent principal to his or her agent in a power of attorney. Watson filed a cross-motion for summary judgment, contending (1) the deed was void as matter of law because it conveyed property to a trust rather than the trustees and (2) Underwood's using her fiduciary powers to create an irrevocable trust that incorporates a fully revocable will, created a will in violation of the powers of a power of attorney. The circuit court held a hearing on the matter on August 26, 2011. On December 13, 2011, the circuit court filed an order granting Respondents' motion and denying Watson's. The court found (1) the power of attorney expressly authorized Underwood to create the trust, such power was legally delegable to the attorney-in-fact, and the trust was not a will and (2) the deed transferring real property was not invalid for lack of a properly named grantee. Watson filed a motion for reconsideration[8], which the circuit court denied. This appeal followed.

## LAW/ANALYSIS

### I. Creation of a Will by a Power of Attorney

 Watson argues the circuit court erred in denying her motion for summary judgment and granting Respondents' partial summary judgment motion on the question of the validity of the trust because the effect of the trust is to create a will in violation of the powers of a power of attorney under South Carolina law.[9] We disagree.

---

8. The Rule 59(e), SCRCP, motion stated the circuit court failed to make specific findings of fact regarding (1) the deed transferring property to a trust rather than trustees, (2) a power of attorney creating an irrevocable trust that references a will created a will, and (3) a power of attorney locking an estate's distribution through an irrevocable trust.

9. We believe the concurrence/dissent is wrong to suggest the circuit court's ruling of the grant of summary judgment should be vacated.

To the extent that Watson's argument addresses the denial of her motion for summary judgment, we will not consider it. The denial of a motion for summary judgment is not appealable because it does not finally determine anything about the merits or strike a defense. *Ballenger v. Bowen*, 313 S.C. 476, 476–77, 443 S.E.2d 379, 379 (1994).

■ The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S. C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

"A trust ... may be created by: (i) transfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death...." S.C.Code Ann. § 62–7–401(a)(1) (Supp.2013).

The power of attorney specifically granted Underwood the power to create trusts, both revocable and irrevocable. Simply because the trust used the will to specify how to distribute

---

Watson did not raise in her 59(e), SCRCP, motion that the circuit court went beyond the relief requested by Respondents. "When a party receives an order that grants certain relief not previously contemplated or presented to the trial court, the aggrieved party must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment in order to preserve the issue for appeal." *In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct.App.1998). Nor does Watson raise it as an issue on appeal. "[A]ppellants have the responsibility to identify errors on appeal, not the [c]ourt." *Kennedy v. S.C. Ret. Sys.*, 349 S.C. 531, 533, 564 S.E.2d 322, 323 (2001). "[A]ppellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked." *State v. Austin*, 306 S.C. 9, 19, 409 S.E.2d 811, 817 (Ct.App.1991) (brackets and internal quotation marks omitted). Accordingly, we will not vacate the circuit court's holdings when Watson never asked us or the circuit court to do so.

the assets held by the trust, this in no way impeded Watson's right to change her will. Watson can still execute a new will or a codicil specifying how her other assets[10] should be distributed upon her death and modify any burial plans. Underwood's creation of the trust did not amount to the execution of a will. Accordingly, the circuit court properly granted Respondents' partial summary judgment motion.

## II. Scope of Power of Attorney

■ Watson further asserts Underwood did not have the authority to execute the trust because the power of attorney was only to be used if her health failed. We disagree.

■■ " 'A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal. The written authorization itself is the power of attorney.' " *In re Thames*, 344 S.C. 564, 569, 544 S.E.2d 854, 856 (Ct.App.2001) (footnotes omitted by court) (quoting 3 Am.Jur.2d *Agency* § 23 (1986)). "A durable power of attorney allows a person, the principal, to designate another as his or her attorney[-]in[-] fact to act on the principal's behalf as provided in the document even if the principal becomes mentally incompetent." *Id.* (citing S.C.Code Ann. § 62–5–501 (Supp.2000)).

■ This court has previously determined "a cause of action to set aside [a power of attorney] is more closely akin to an action to set aside a contract, deed, or petition than it is to a will contest." *Id.* at 571, 544 S.E.2d at 857. The same reasoning lends itself to the conclusion that an action to interpret a power of attorney is similar to an action to interpret a contract. An action to interpret a contract is an action at law. *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). "The construction of a contract which is ambiguous, or capable o[f] more than one construction, is a question of fact." *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct.App.1993). "The cardinal

---

10. The record does not specifically provide what assets of Watson's were not transferred to the trust but her personalty and her inheritance from her husband were not transferred to the trust.

rule of contract interpretation is to ascertain and give effect to the intention of the parties and, in determining that intention, the court looks to the language of the contract." *Sphere Drake Ins. Co. v. Litchfield,* 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct.App.1993).

 Generally, "the construction of contracts is a question of law for the court." *Hope Petty Motors v. Hyatt,* 310 S.C. 171, 175, 425 S.E.2d 786, 789 (Ct.App.1992). Determining what the parties intended becomes a question of fact for the jury only when the contract is ambiguous. *Id.* "If a contract is unambiguous, extrinsic evidence cannot be used to give the contract a meaning different from that indicated by its plain terms." *Bates v. Lewis,* 311 S.C. 158, 161 n. 1, 427 S.E.2d 907, 909 n. 1 (Ct.App.1993). "A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one." *Jordan v. Sec. Grp., Inc.,* 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993). "Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." *Id.* "Resort to construction by a party is only done when the contract is ambiguous or there is doubt as to its intended meaning." *Id.* "The [c]ourt's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Id.*

In support of this argument, Watson cites to her testimony during a deposition.[11] However, the power of attorney is not ambiguous on its face. It does not provide that it only takes affect if her health failed. It actually describes how mental incapacity and physical disability shall not affect the power of attorney. Accordingly, because the power of attorney is not ambiguous on its face, the court cannot look beyond it and consider other evidence such as testimony. Therefore, the power of attorney took effect once executed.

---

11. Conversely, Townsend provided he explained the power of attorney would continue to be in effect if she were to become incapacitated. He testified Watson had declined a healthcare power of attorney. He further stated Watson had not asked for a springing power of attorney, which would only come into effect if she was to be declared incompetent, because if she had, he would have prepared one.

### III. Confidential Relationship and Fiduciary Duty

Watson maintains the circuit court erred in granting Respondents' summary judgment motion on the question of whether or not the irrevocable trust is valid because there were multiple questions of fact for a jury to determine. Watson contends Underwood had both a confidential and fiduciary relationship with Watson and by creating the irrevocable trust naming herself as a beneficiary she violated those duties. We find these issues are not properly before this court.

██ Watson's memorandum in support of her reply to Respondents' summary judgment motion and her cross-motion for summary judgment alleges Underwood and Watson had a confidential and fiduciary relationship. Respondents' memorandum of law in support of their motion of partial summary judgment and in opposition to Watson's cross-motion for summary judgment addressed Watson's allegations regarding breach of fiduciary duty in creating trust. It stated, "This portion of the Memo of Law addresses [Watson's] arguments that are beyond the particular questions presented but which [Respondents] cannot allow to go unanswered." The circuit court's order makes no reference to whether a fiduciary or confidential relationship was violated here. In Respondents' brief they state, "The motion for partial summary judgment did not raise, and the Order under appeal did not address, and rightfully so, trust validity issues related to a confidential relationship, undue influence or fiduciary duty...." "Generally, an issue must be raised to and ruled upon by the circuit court to be preserved." *Pye v. Estate of Fox,* 369 S.C. 555, 565, 633 S.E.2d 505, 510 (2006) (citing *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (noting a party must file a Rule 59(e) motion "when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review")). Accordingly, because these issues were not addressed in the grant of Respondents' motion for partial summary judgment or raised in Watson's 59(e) motion, we will not examine them on appeal.

### IV. Denial of Summary Judgment—Transfer to Trust

██ Watson asserts the circuit court erred in denying her motion for summary judgment regarding when a deed

purports to transfer her property to a trust rather than to the trustees. The denial of a motion for summary judgment is not appealable because it does not finally determine anything about the merits or strike a defense. *Ballenger,* 313 S.C. at 476–77, 443 S.E.2d at 379. It "simply decides the case should proceed to trial." *Id.* at 477, 443 S.E.2d at 380. It "does not establish the law of the case, and the issues raised in the motion may be raised again later in the proceedings by a motion to reconsider the summary judgment motion or by a motion for a directed verdict." *Id.*

> [A] judge deciding a case on the merits is not bound by a prior order of another judge denying summary judgment. If the law were otherwise, a party could never obtain relief from an erroneous order denying summary judgment since orders denying summary judgment are never appealable, not even after final judgment.

*Weil v. Weil,* 299 S.C. 84, 89, 382 S.E.2d 471, 473 (Ct.App. 1989). "[I]t is unnecessary to make findings of fact and conclusions of law in denying motions for summary judgment." *Ballenger,* 313 S.C. at 478 n. 1, 443 S.E.2d at 380 n. 1. However, when denying Watson's motion for summary judgment, the circuit court made conclusions of law. Because the denial of a motion for summary judgment cannot be appealed, we cannot consider this issue. We note that Watson is not bound by the circuit court's conclusions of law on this issue and can raise the issue again at trial.

## V. Denial of Petition to Terminate Trust

 Watson contends the circuit court erred in denying her petition to terminate the trust. She maintains all the terms and conditions of section 62–7–411 of the South Carolina Code (Supp.2013) were satisfied because she and Long are the sole beneficiaries, Watson is the settlor, and they gave their consent to terminate the trust. We find this issue is not appealable at this time.

 "The right of appeal arises from and is controlled by statutory law." *Ex parte Capital U–Drive–It, Inc.,* 369 S.C. 1, 6, 630 S.E.2d 464, 467 (2006). "An appeal ordinarily may be pursued only after a party has obtained a final judgment." *Id.* (citing S.C.Code Ann. § 14–3–330(1) (1977); Rule 72, SCRCP; Rule 201(a), SCACR). "The determination

of whether a party may immediately appeal an order issued `
before or during trial is governed primarily by [section 14–3–
330 of the South Carolina Code (1977 & Supp.2013) ]." *Id.*
"Absent a specialized statute, an order must fall into one of
several categories set forth in [s]ection 14–3–330 in order to be
immediately appealable." *Id.* "An order 'involves the merits,'
as that term is used in [s]ection 14–3–330(1)[,] and is immedi-
ately appealable when it finally determines some substantial
matter forming the whole or part of some cause of action or
defense." *Id.* at 7, 630 S.E.2d at 467 (footnote omitted). "The
phrase 'involving the merits' is narrowly construed.... An
order usually will be deemed interlocutory and not immediate-
ly appealable when there is some further act that must be
done by the trial court prior to a determination of the parties'
rights." *Id.* at 7, 630 S.E.2d at 467–68.

 "The provisions of [s]ection 14–3–330, including sub-
section (2), have been narrowly construed and immediate
appeal of various orders issued before or during trial generally
has not been allowed. Piecemeal appeals should be avoided
and most errors can be corrected by the remedy of a new
trial." *Hagood v. Sommerville,* 362 S.C. 191, 196, 607 S.E.2d
707, 709 (2005). "The basic policy behind denying immediate
review of pretrial motions is avoidance of piecemeal litigation
where the rights of the parties have not been substantially
impacted." *Breland v. Love Chevrolet Olds, Inc.,* 339 S.C. 89,
94, 529 S.E.2d 11, 13 (2000).

 "An order affects a substantial right and is imme-
diately appealable when it '(a) in effect determines the action
and prevents a judgment from which an appeal might be taken
or discontinues the action, (b) grants or refuses a new trial[,]
or (c) strikes out an answer or any part thereof or any
pleading in any action.' " *Hagood,* 362 S.C. at 195, 607 S.E.2d
at 709 (brackets omitted) (quoting § 14–3–330(2)). Usually,
an order that does not finally end a case or prevent a final
judgment from which a party could appeal is not immediately
appealable. *Id.* A judgment that determines what law is
applicable but leaves questions of fact unsettled is not a final
judgment. *Good v. Hartford Accident & Indem. Co.,* 201 S.C.
32, 41, 21 S.E.2d 209, 212 (1942). Additionally, a decree or
judgment that leaves in doubt whether the plaintiff will prevail

is not final. *Donaldson v. Bank,* 4 S.C. 106, 115 (1873). An order is not immediately appealable when appellants "have not 'arrived at the end of the road' and [would] be able to appeal the decision after the trial [wa]s finished." *Baldwin Constr. Co. v. Graham,* 357 S.C. 227, 230, 593 S.E.2d 146, 147 (2004).

However, "an order that is not directly appealable will nonetheless be considered if there is an appealable issue before the [c]ourt and a ruling on appeal will avoid unnecessary litigation." *Hite v. Thomas & Howard Co.,* 305 S.C. 358, 360, 409 S.E.2d 340, 341 (1991), *overruled on other grounds by Huntley v. Young,* 319 S.C. 559, 462 S.E.2d 860 (1995).[12] Generally, "[t]his [c]ourt reviews interlocutory orders when they contain other appealable issues." *Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 565, 564 S.E.2d 94, 98 (2002). However, this court has declined to consider interlocutory issues even when accompanied by an appealable order, such as the grant of summary judgment, when the court found the issue to be novel and relating to the sufficiency of the allegations, which the trial court had not had the opportunity on which to rule. *Pruitt v. Bowers,* 330 S.C. 483, 488, 499 S.E.2d 250, 253 (Ct.App.1998). The supreme court has noted "if the question involved will be inherent in the final judgment and can be presented in an appeal from that judgment, it will be treated as an interlocutory order, review of which can only be had upon the general appeal." *Good,* 201 S.C. at 41, 21 S.E.2d at 212 (internal quotation marks omitted).

In ruling on the petition, the circuit court referred to it as interlocutory. Watson did not immediately appeal the denial of her petition; she waited and appealed it with the court's grant of Respondents' partial summary judgment motion and the denial of her summary judgment motion. Here, the granting of Respondents' summary judgment motion is immediately appealable. Therefore, we could consider the denial of the petition if it would avoid unnecessary litigation. However, because the matters at issue in terminating the trust are intertwined with those to be determined at trial, we find the petition is not appealable until a final judgment has occurred.

---

12. The denial of summary judgment is never appealable, even after final judgment. *Olson v. Faculty House of Carolina, Inc.,* 354 S.C. 161, 168, 580 S.E.2d 440, 444 (2003).

This court's ruling on this issue would not avoid unnecessary litigation because this matter is still to be litigated. Accordingly, we will not review the circuit court's denial of the petition in this appeal.

## CONCLUSION

We affirm the circuit court's grant of Respondents' partial summary judgment motion. We do not address the denial of Watson's summary judgment motion nor petition to terminate the trust. Accordingly, the circuit court is

**AFFIRMED.**

PIEPER, J., concurs.

FEW, C.J., concurring in part, and dissenting in part.

I concur in the majority's decision to affirm partial summary judgment to Underwood on the only two issues raised in her motion: (1) Did Watson grant Underwood power of attorney; and (2) Did Underwood have authority under that power of attorney to create an irrevocable trust. Because Underwood's motion raised no other issues, I would vacate all other relief granted by the circuit court.