### 23817

Robert L. JORDAN, Jordan Oil Company of North Carolina, Inc., and R.L. Jordan Oil Company, Inc. of South Carolina, Respondents v. SECURITY GROUP, INC., Appellant.

(428 S.E. (2d) 705)

Supreme Court

*Marshall T. Walsh,* of *Gaines, Walsh & Chapin,* Spartanburg, *for appellant.*

Heard Jan. 6, 1993.

Decided March 15, 1993.

HARWELL, Chief Justice:

Security Group, Inc. (SGI) appeals from a declaratory judgment order that construed a settlement agreement as requiring SGI to furnish financial statements to respondent Robert L. Jordan (Jordan). We reverse.

## I. FACTS

Jordan and Jesse L. Bridges (Bridges) were sole shareholders of SGI, a holding company which owns a lending enterprise. Bridges and Jordan were unable to agree on the management of SGI, and in 1987 Jordan instituted a legal action to resolve their dispute. The parties and their counsel entered into lengthy negotiations which resulted in SGI's agreeing to, among other things, immediately retire Jordan's stock in exchange for payments to Jordan over a period of several years. A comprehensive settlement agreement (the agreement) was negotiated with the assistance of counsel and executed by Bridges and Jordan. The agreement contained the following paragraph (paragraph 22), the operation of which is the issue in this case:

> 22. *Net Worth Maintenance.* As a further assurance of the timely payment of all amounts owed to Jordan hereunder, SGI and Bridges hereby covenant and agree to maintain a joint net worth (to be determined at the end of each calender quarter) in an aggregate amount not less than one-hundred fifty percent (150%) of the present value of all payments owed hereunder to Jordan at the time of the determination, such present value to be determined using a discount rate of ten percent (10%). For this purpose, SGI's net worth shall not be reduced by payments owing hereunder and Bridges' net worth shall be

determined (i) in the case of his SGI stock, at its book value, and (ii) in the case of all other assets, based upon reasonable estimates of fair market value thereof.

Following Bridges' death in 1989, Jordan became concerned that SGI would be unable to make payments under the agreement and requested that it provide verification of SGI and Bridges' joint net worth as set forth in paragraph 22. SGI began supplying Jordan with quarterly one-page "net worth maintenance computations" which purported to show that the net worth requirements of paragraph 22 had been satisfied. When Jordan requested SGI to provide more detailed financial statements supporting the figures set forth in the net worth maintenance computation, SGI declined.

Jordan then filed a declaratory judgment action asking the court to construe paragraph 22 as requiring SGI to furnish periodic, detailed financial statements by which Jordan could independently determine SGI's net worth. The trial judge found that paragraph 22 was ambiguous regarding the method of implementing the requirements of the paragraph. He also discerned that SGI implicitly had recognized the alleged ambiguity subsequent to the execution of the agreement. This finding was based on a 1990 letter from SGI's attorney, in which the attorney acknowledged that "Mr. Jordan is entitled to be assured that the requirements in paragraph 22 of the Agreement have been complied with." The trial judge held that the parties intended for SGI to supply Jordan with the same type of quarterly and annual corporate financial statements Jordan received as a shareholder.

SGI filed a motion pursuant to Rule 59(e), SCRCP, asking the trial judge to specify the content of the financial statements it must furnish to Jordan. An amended order was issued that required SGI to provide Jordan with the same quarterly and annual financial reports it provided to its next largest creditor. SGI appealed.

## II. DISCUSSION

SGI contends that the trial judge erred in finding paragraph 22 ambiguous and then construing it as requiring SGI to furnish Jordan with detailed financial statements. We agree.

A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one. *Farr v. Duke Power Co.*, 265 S.C. 356, 218 S.E. (2d) 431 (1975). Where the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect. *Blakeley v. Rabon*, 266 S.C. 68, 221 S.E. (2d) 767 (1976). The plain language of paragraph 22 establishes that SGI and Bridges must maintain a joint net worth calculated on a quarterly basis, but does not indicate that SGI must verify its net worth to Jordan.[1]

Jordan contends, however, that an ambiguity is created because paragraph 22 is silent as to the information to be furnished. To construe the "ambiguity," Jordan urges us to look beyond the agreement for other evidence of what the parties intended when the agreement was executed, including the construction of paragraph 22 adopted by the parties subsequent to the formation of the agreement. Resort to construction by a party is only done when the contract is ambiguous or there is doubt as to its intended meaning. *Circle Square Co. v. Atlantis Development Co.*, 267 S.C. 618, 230 S.E. (2d) 704 (1976). In our view, silence as to whether the joint net worth requirement must be verified does not render paragraph 22 capable of more than one interpretation or cast doubt on its intended meaning. We find that paragraph 22 is not ambiguous and that its force and effect can be determined from its language alone.

The Court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *McPherson v. J.E. Sirrine & Co.*, 206 S.C. 183, 206, 33 S.E. (2d) 501, 510 (1945). We find that the trial judge erred in construing paragraph 22 as requiring SGI to furnish detailed financial statements to Jordan. Accordingly, his order is

Reversed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.

---

[1] This finding is consistent with Jordan's concession at oral argument that verification of the joint net worth required by paragraph 22 was not contemplated until some time after the death of Bridges, when Jordan first became concerned that SGI would be unable to make future payments.