671 S.E.2d 101

Elizabeth N. TIMMONS, Individually and through her Attorney–in–Fact, Charles T. Timmons, Respondent,

v.

Jane T. STARKEY and UBS Financial Services, Inc., Defendants,

of whom UBS Financial Services, Inc. is the Appellant.

No. 4459.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2008.

Decided Nov. 20, 2008.

Rehearing Denied Jan. 27, 2009.

George C. Covington, of Charlotte, NC, for Appellant.

Jan L. Warner, Matthew E. Steinmetz, of Columbia, for Respondent.

GEATHERS, J.:

This action involves several tort and contract claims arising from the alleged conversion of account funds by Jane Starkey (Starkey), a securities broker employed with Appellant UBS Financial Services, Inc. (UBS). Starkey is also the daughter of Respondent Elizabeth Timmons (Timmons), who filed this action against Starkey and UBS.

UBS appeals the circuit court's denial of its motion to compel arbitration.[1] UBS challenges the circuit court's ruling that arbitration is inappropriate because Timmons' claims are independent of the parties' contract. We reverse.

## FACTS/PROCEDURAL HISTORY

In June 1995, Timmons executed a durable power of attorney naming her daughter, Starkey, as her attorney-in-fact. This instrument was not recorded with the Greenville County Register of Deeds until June 3, 2004.[2] Article III of the Power of Attorney includes the following language:

No person who may act in reliance upon the representations of Attorney for the scope of authority granted to Attorney shall incur any liability to me or to my estate as a result of permitting Attorney to exercise any power, *nor shall any*

---

1. Starkey has not appealed the circuit court's denial of her motion to compel arbitration.

2. S.C.Code Ann. § 62–5–501(C) (Supp.2007) requires a durable power of attorney to be recorded to be effective, unless the authority of the attorney-in-fact relates solely to the person of the principal.

*person dealing with Attorney be responsible to determine or insure the proper application of funds or property.*

(emphasis added).

In April 1996, Timmons entered into a contract with J.C. Bradford & Co. (J.C. Bradford) for investment services. The contract form included a broadly-worded arbitration clause:

I agree ... that all controversies which may arise between us concerning *any transaction* or the construction, performance or breach of this or any other agreement between us ... shall be determined by arbitration.

(emphasis added).

As UBS became the successor-in-interest to J.C. Bradford, Timmons' account with J.C. Bradford was converted to an account with UBS. In November 2004, Timmons executed an investment services contract with UBS. That contract also contained a broadly-worded arbitration clause. The UBS contract states, in part,

BY SIGNING BELOW, I UNDERSTAND, ACKNOWL-EDGE AND AGREE ... that in accordance with the last paragraph of the Master Account Agreement entitled 'Arbitration[,]' I am agreeing in advance to arbitrate any controversies which may arise with ... UBS Financial Services in accordance with the terms outlined therein[.]

(emphasis in original).

The arbitration clause of the Master Account Agreement states, in part,

Client agrees ... that any and all controversies which may arise between UBS Financial Services, any of UBS Financial Services' employees or agents and Client concerning *any account, transaction, dispute* or the construction, performance or breach of this Agreement or any other agreement ... shall be determined by arbitration.

(emphasis added).[3]

According to the allegations of Timmons' complaint, Starkey removed over $129,000 from Timmons' accounts at UBS and

---

3. Timmons argues that UBS'S Master Account Agreement should not have been included in the Record on Appeal because UBS failed to present it to the circuit court. We disagree. While the Master Account Agreement was not included with UBS'S pleadings, it was incorporated

Branch Banking & Trust and used those funds for Starkey's personal benefit. Timmons then filed an action against Starkey and UBS, seeking damages for Starkey's alleged conversion of funds from Timmons' accounts. Timmons asserted causes of action against Starkey and UBS for breach of fiduciary duty, negligence, conversion, influenced transactions, intentional infliction of emotional distress, and violation of the Omnibus Adult Protection Act.[4] Timmons' complaint also included the following causes of action against Starkey alone: breach of contract, breach of contract accompanied by a fraudulent act, and constructive trust.

Both UBS and Starkey filed separate motions to compel arbitration of Timmons' claims. The circuit court concluded that the allegations of the complaint fell outside the scope of the arbitration clause in the investment services contract and that the claims asserted by Timmons were completely independent of the contract. Therefore, the circuit court denied both motions to compel arbitration. This appeal follows.

## STANDARD OF REVIEW

The determination of whether a claim is subject to arbitration is subject to de novo review. *Chassereau v. Global–Sun Pools, Inc.,* 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007). However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings. *Id.*

## LAW/ANALYSIS

UBS argues that the circuit court erred in denying its motion to compel arbitration because Timmons' claims against UBS fell within the scope of the arbitration clause in the

---

into the UBS contract by direct reference, and the UBS contract was included in UBS'S Motion to Compel Arbitration. In any event, the circuit court's order sets forth the pertinent language of the arbitration clause in the J.C. Bradford contract and includes a finding that Timmons signed a similar contract with UBS. Timmons did not appeal this finding, and as such, it is the law of the case. *See Charleston Lumber Co., Inc. v. Miller Hous. Corp.,* 338 S.C. 171, 175, 525 S.E.2d 869, 871–72 (2000) (holding that an unappealed ruling is the law of the case).

4. S.C.Code Ann. §§ 43–35–5 to –595 (Supp.2007).

parties' contract. In the alternative, UBS argues that there was a significant relationship between Timmons' claims and the parties' contract and that, therefore, arbitration was required. We agree.

Both South Carolina and federal policy favor the arbitration of legal disputes. *Zabinski v. Bright Acres Associates.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). Arbitration is required when (1) an arbitration clause specifically encompasses the asserted claims; or (2) there exists a significant relationship between the asserted claims and the parties' contract. *Id.* at 596–598, 553 S.E.2d at 118–119 (internal citations omitted).

## A. Scope of Arbitration Clause

To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim. *Id.* at 597, 553 S.E.2d at 118. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* Unless the court can say with "positive assurance" that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered. *Id.*

UBS asserts that all of Timmons' claims are based on the underlying allegation that UBS failed to prevent Starkey from removing funds from Timmons' account and that such an allegation is within the scope of the arbitration clause. UBS argues that Starkey's removal of the funds was a "transaction" contemplated by the arbitration clause in both the J.C. Bradford contract and the UBS contract. We agree.

The respective arbitration clauses in the J.C. Bradford and UBS contracts provide that all controversies which may arise between UBS and Timmons concerning any transaction or the performance or breach of any contract between the parties shall be determined by arbitration. Additionally, the arbitration clause in the UBS agreement expands the scope of arbitrable controversies to include those concerning any account or dispute.

Unquestionably, Starkey's removal of funds from Timmons' account constituted a "transaction" within the scope of the respective arbitration clauses in the J.C. Bradford contract and the UBS contract. Further, Starkey's removal of funds concerned an "account" within the scope of the arbitration clause in the UBS contract. Moreover, all of Timmons' claims depend on the allegation that UBS failed to prevent Starkey from removing funds from Timmons' account.[5] Any duty that UBS owed toward Timmons arose solely from their contractual relationship. Therefore, the respective arbitration clauses in the J.C. Bradford contract and the UBS contract encompass Timmons' claims.

### B. Significant Relationship

UBS alternatively argues that a significant relationship exists between Timmons' claims and the parties' contract because the underlying allegations involve alleged duties created solely by the parties' contractual relationship. We agree.

Even if a dispute does not arise under the parties' contract, a broadly-worded arbitration clause in the contract applies to that dispute when a "significant relationship" exists between the asserted claims and the contract. *See Zabinski*, 346 S.C. at 598, 553 S.E.2d at 119. An instructive discussion of the "significant relationship" test is set forth in *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 151, 644 S.E.2d 705, 709 (2007). In *Aiken*, a borrowers claims against a lender were based on an allegation that the lenders employees conspired to use the borrowers personal information to obtain sham loans and to embezzle the proceeds. *Aiken*, 373 S.C. at 147, 644 S.E.2d at 707. The South Carolina Supreme Court declined to find a significant relationship between the borrower's claims and his loan contract with the lender. *Id.* at 151, 644 S.E.2d at 709. The Court stated that it would refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings. *Id.*

---

5. None of Timmons' claims include any allegations of improper management of her account, such as churning or making improper investments, prior to Starkey's removal of funds from the account.

The Court also emphasized that a determination of foreseeability is to be made from the standpoint of the injured party, i.e., the expectations of a reasonable man, rather than from the standpoint of the reviewing court. *Id.* at 151 n. 6, 644 S.E.2d at 709 n. 6. The Court made it clear that it did not seek to exclude all intentional torts from the group of claims subject to arbitration, but that it sought only to distinguish those outrageous torts that are legally distinct from the contractual relationship between the parties. *Aiken,* 373 S.C. at 152, 644 S.E.2d at 709.

Here, Timmons' claims depend on the underlying assertion that UBS failed to prevent Starkey from removing Timmons' funds from her account. Any duty to prevent the removal of funds from Timmons' account arises solely from the parties' contractual relationship. Further, we agree with UBS's argument that the exception for outrageous and unforeseeable conduct does not apply to Timmons' claims, so as to preclude arbitration of those claims. In light of Timmons' execution of the power of attorney, it was foreseeable that UBS could determine that Starkey had the authority to withdraw funds from Timmons' account.

Starkey's alleged misappropriation of the funds after she withdrew them from Timmons' account may have been unforeseeable and certainly outrageous. However, the relevant inquiry does not focus on the foreseeability of Starkey's betrayal of Timmons' trust, but rather on the foreseeability of UBS's inaction prior to and during Starkey's withdrawal of the funds from the UBS account.

Further, foreseeability must be examined from the standpoint of the injured party, i.e., the expectations of a reasonable person in Timmons' position at the time she entered into the contract with UBS. *See Aiken,* 373 S.C. at 151 n. 6, 644 S.E.2d at 709 n. 6. In applying the reasonable person standard to the facts of Timmons' case, it is impossible to ignore her execution of the power of attorney. That instrument gave Starkey clear legal authority to withdraw funds from Timmons' accounts and expressly held harmless anyone who might rely on the power of attorney while doing business with Starkey. By the time Timmons signed the investment services contract with UBS in

November 2004, the power of attorney had been recorded.[6] Therefore, it was foreseeable to a reasonable person in the context of normal business dealings that UBS would allow Starkey to withdraw funds from Timmons' account.

## CONCLUSION

Arbitration is required when either (1) an arbitration clause specifically encompasses the asserted claims; or (2) there exists a significant relationship between the asserted claims and the parties' contract. The respective arbitration clauses in the J.C. Bradford contract and the UBS contract specifically encompass Timmons' claims against UBS because they all concern a transaction involving her UBS account.

Further, there is a significant relationship between the parties' contract and Timmons' claims. Those claims depend on the allegation that UBS breached a duty to prevent Starkey from transferring Timmons' funds from her UBS account. That alleged duty was created solely by the contractual relationship between the parties. Moreover, the exception for outrageous and unforeseeable conduct that would preclude arbitration does not apply to UBS because the possibility that UBS could rely on the power of attorney was foreseeable to Timmons when she signed the J.C. Bradford and UBS contracts. Based on the foregoing, the circuit court must compel arbitration of Timmons' claims against UBS.

Accordingly, the circuit court's order is

**REVERSED and REMANDED.**[7]

HEARN, C.J., and HUFF, J., concur.

---

6. Even when Timmons signed the J.C. Bradford contract, she should have been aware that the hold-harmless language in the existing power of attorney, once recorded, could induce those doing business with Starkey to honor her full control over the account funds.

7. Pursuant to Rule 215, SCACR, we decide this appeal without oral arguments.