WILLIAMS, J.:
**571 In this civil case, White Oak Manor, Inc. (White Oak)--a skilled nursing facility--appeals the circuit court's order denying White Oak's motion to compel arbitration of wrongful death and survival actions brought by Hilda Stott as personal representative of the estate of Jolly P. Davis (Decedent). On appeal, White Oak argues the circuit court erred in finding Stott lacked the authority to execute White Oak's admission documents--including an arbitration agreement (the Arbitration Agreement)--on Decedent's behalf. We affirm.
FACTS/PROCEDURAL HISTORY
On December 22, 2012, Emergency Medical Services transferred Decedent to Spartanburg Regional Medical Center (Spartanburg Regional) after Decedent informed his niece, Stott, that his oxygen saturation levels had dropped. After Decedent was stabilized at Spartanburg Regional, he was admitted to White Oak on January 2, 2013, for "rehabilitation [and] possibly long-term care." The same day as Decedent's admission to White Oak, Stott, acting as Decedent's authorized **572 representative,[1] signed White Oak's admission documentation--including the Arbitration Agreement. Decedent's initial evaluation at White Oak found he possessed intact mental functioning and he was alert and oriented to time, place, and situation. Decedent also correctly answered questions about his location, his age, his birthday, the current date and year, and current and past presidents. Over the next two weeks, Decedent was transferred between Spartanburg Regional and White Oak multiple times before Decedent passed away on January 16, 2013.
On December 16, 2015, Stott filed wrongful death and survival actions against White Oak alleging Decedent was "overmedicated and dehydrated which led to his untimely death." White Oak filed a motion to compel arbitration based on the Arbitration Agreement.[2] At the circuit court's hearing, Stott argued her durable power of attorney for finance was ineffective to grant her the authority to sign the Arbitration Agreement on Decedent's behalf. White Oak argued Stott's durable power of attorney for finance was effective to authorize her to sign the Arbitration Agreement on Decedent's behalf because Decedent was physically disabled.
The circuit court ruled in Stott's favor and issued an order denying White Oak's motion *85 to compel arbitration. The circuit court found (1) Decedent had full capacity to sign the Arbitration Agreement at the time of his admission to White Oak, (2) Stott's durable power of attorney for finance did not become effective until after Stott signed the Arbitration Agreement because it was not recorded as required by law, and (3) Stott's healthcare power of attorney did not authorize Stott to enter into the Arbitration Agreement because Decedent was competent when the Arbitration Agreement was signed. The circuit **573 court relied on Coleman v. Mariner Health Care, Inc.[3] in finding "the authority to make healthcare decisions does not extend to arbitration agreements." This appeal followed.
STANDARD OF REVIEW
Whether a claim is arbitrable "is an issue for judicial determination, unless the parties provide otherwise." Zabinski v. Bright Acres Assocs. , 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). The appellate court reviews the circuit court's determination of whether a claim is arbitrable under a de novo standard. Chassereau v. Global Sun Pools, Inc. , 373 S.C. 168, 171, 644 S.E.2d 718, 720 (2007). "However, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings." Timmons v. Starkey , 380 S.C. 590, 595, 671 S.E.2d 101, 104 (Ct. App. 2008).
LAW/ANALYSIS
I. Durable Power of Attorney for Finance
White Oak first argues Stott had the authority to sign the Arbitration Agreement on Decedent's behalf under a valid durable power of attorney for finance. We disagree.
"[A]rbitration is a matter of contract, and our evaluation of the enforceability of an arbitration agreement is guided by general principles of contract law." Grant v. Magnolia Manor-Greenwood, Inc. , 383 S.C. 125, 130, 678 S.E.2d 435, 438 (2009). A person possessing contractual capacity, acting as grantor, can authorize another to contract on the grantor's behalf under the specific terms of a power of attorney. See Gaddy v. Douglass , 359 S.C. 329, 344-45, 597 S.E.2d 12, 20 (Ct. App. 2004). "[T]he holder of [the] power of attorney steps into the shoes of the grantor and is basically the alter ego of the grantor." Bennett v. Carter , 421 S.C. 374, 382, 807 S.E.2d 197, 201 (2017).
"A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal. The written authorization itself is the power of attorney."
**574 Watson v. Underwood , 407 S.C. 443, 454, 756 S.E.2d 155, 161 (Ct. App. 2014) (quoting In re Thames , 344 S.C. 564, 569, 544 S.E.2d 854, 856 (Ct. App. 2001) ) (internal quotation marks omitted). A power of attorney classified as "durable" contains language establishing the principal's intent that the attorney-in-fact or agent's authority be exercisable during periods of the principal's physical or mental incapacity. See Gaddy , 359 S.C. at 344 n.11, 597 S.E.2d at 20 n.11 (" 'Durable' is a term of art signifying that a power of attorney survives the principal's disability."). In South Carolina, a durable power of attorney for finance must be recorded in order to be effective. S.C. Code Ann. § 62-5-501(C) (2009 & Supp. 2013) ;[4] see also Timmons , 380 S.C. at 593 n.2, 671 S.E.2d at 103 n.2 (" S.C. Code Ann. § 62-5-501(C) ... require[d] a durable power of attorney to be recorded to be effective, unless the authority of the attorney-in-fact relates solely to the person of the principal.").
On May 11, 2012, Decedent signed the durable power of attorney for finance in favor *86 of Stott. On January 2, 2013, Stott signed the Arbitration Agreement. However, Stott's durable power of attorney for finance was not recorded until January 8, 2013. Therefore, Stott's durable power of attorney for finance was not effective to authorize her to sign the Arbitration Agreement on Decedent's behalf. See Timmons , 380 S.C. at 593 n.2, 671 S.E.2d at 103 n.2 (" S.C. Code Ann. § 62-5-501(C) ... require[d] a durable power of attorney to be recorded to be effective, unless the authority of the attorney-in-fact relates solely to the person of the principal.").
White Oak contends Stott's durable power of attorney for finance was effective even though it was not recorded when Stott signed the Arbitration Agreement because of the **575 Arbitration Agreement's "opt out" clause. The Arbitration Agreement's opt out clause provides the following information:
16. At the time of signing this Agreement, [Stott] acknowledges having ... been advised that, beginning seven (7) days from date hereof, and for another ten (10) days thereafter, he/she has the right to "opt out" of this Agreement, and no longer be bound by it. In the event the party signing below determines to opt out, he/she must give [White Oak] written notice thereof within the time provided. If written notice of [Stott] having opted out of this Agreement is not received within the time frame set forth, the within Agreement will remain and continue in full force and effect .
(emphasis added). White Oak asserts the Arbitration Agreement did not become binding until the time period in the opt out clause expired on January 19, 2013. Therefore, White Oak contends Stott had the authority to sign the Arbitration Agreement when the Arbitration Agreement became binding on January 19, 2013, because Stott recorded her durable power of attorney for finance before the opt out clause expired.
We find White Oak's argument regarding the opt out clause is meritless in light of the language italicized above. See Watson , 407 S.C. at 455, 756 S.E.2d at 161 ("Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." (quoting Jordan v. Sec. Grp., Inc. , 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) )). The opt out clause states Stott had the right to opt out of the Arbitration Agreement and "no longer" be bound by it, which indicates the Arbitration Agreement was binding at the time Stott signed it. By stating the Arbitration Agreement "will remain and continue in full force and effect," the opt out clause indicates Stott was bound by the Arbitration Agreement during the opt out period referenced in the clause. In light of the opt out clause's language, we find the Arbitration Agreement was binding during the opt out period. Therefore, we find Stott's unrecorded durable power of attorney for finance was not effective to authorize her to sign the Arbitration Agreement on Decedent's behalf.
**576 II. Health Care Power of Attorney
White Oak next argues Stott had the authority to sign the Arbitration Agreement on Decedent's behalf under a valid durable health care power of attorney. We disagree.
"A health care power of attorney is an instrument in which an individual known as the principal authorizes another person known as the attorney-in-fact, or agent, to make health care decisions on his behalf." 12 S.C. JUR. Death and Right to Die § 14 (2019) ; see S.C. Code Ann. § 62-5-504(B)(1) (2009 & Supp. 2013). Section 62-5-504(D) of the South Carolina Code (2009 & Supp. 2013) provides a statutory form of the health care power of attorney (the statutory form). All health care powers of attorney executed on or after January 1, 2007, must be in substantially the same form as the statutory form. Id. The authority of the agent in the statutory form only activates if the principal is unable to make or participate in health care treatment decisions.[5] See S.C. Code Ann. § 62-5-504(D) & (S)(1)(a) (2009 & Supp. 2013) ; Franchelle C. Millender et al., A Practical Guide to Elder and Special Needs Law in South Carolina 83 (4th ed. 2014). Like the durable power of attorney for finance, a *87 health care power of attorney can be classified as "durable" if it contains language establishing the principal's intent that the agent's authority be exercisable during periods of the principal's physical or mental incapacity. See Gaddy , 359 S.C. at 344 n.11, 597 S.E.2d at 20 n.11 (" 'Durable' is a term of art signifying that a power of attorney survives the principal's disability.").
Although a durable power of attorney is traditionally effective upon execution, any durable power of attorney can provide that it will not take effect until the principal becomes incapacitated. See Millender at 86 ("[A] [durable power of attorney] can provide that it will not take effect until the principal becomes [incapacitated]."); Elizabeth G. Patterson, Planning for Health Care Using Living Wills and Durable Powers of Attorney: A Guide for the South Carolina Attorney , 42 S.C. L. REV. 525, 552 (1991) (explaining how an alternative form of a durable power of attorney does not become effective **577 until the principal's disability). This type of durable power of attorney is often called a "springing" durable power of attorney because the agent's authority "springs" into effect when activated either by the principal or because of the principal's incapacity. Id. ; 12 S.C. JUR. Death and Right to Die § 14(c) (2018). The springing durable power of attorney is often used by principals who want to retain control of their health care until they no longer have legal capacity to do so. Patterson, 42 S.C. L. REV. 525, 573 (1991). South Carolina law authorizes the use of both the traditional and springing forms of the durable power of attorney. See S.C. Code Ann. § 62-5-501(A) (2009 & Supp. 2013). The statutory form is a springing durable power of attorney. See § 62-5-504(D) ; 12 S.C. JUR. Death and Right to Die § 14(c) ; Millender at 83. The principal's mental incompetence triggers the attorney-in-fact or agent's authority under the statutory form. See § 62-5-504(D) ; 12 S.C. JUR. Death and Right to Die § 14(c) ; Millender at 83.
Our courts have looked to contract law when reviewing actions to set aside or interpret a power of attorney. See Thames , 344 S.C. at 571, 544 S.E.2d at 857 (analyzing an action to set aside a power of attorney under contract law); Watson , 407 S.C. at 454, 756 S.E.2d at 161 (analyzing an action to interpret a power of attorney under contract law). "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties, and, in determining that intention, the court looks to the language of the contract." Watson , 407 S.C. at 454-55, 756 S.E.2d at 161 (quoting Sphere Drake Ins. v. Litchfield , 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct. App. 1993) ). "Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." Watson , 407 S.C. at 455, 756 S.E.2d at 161 (quoting Jordan , 311 S.C. at 230, 428 S.E.2d at 707 ). "The [c]ourt's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." Id. at 455, 756 S.E.2d at 162 (quoting Jordan , 311 S.C. at 230, 428 S.E.2d at 707 ).
Stott's durable health care power of attorney is identical to the statutory form. Stott's durable health care power of attorney contains a provision entitled "EFFECTIVE DATE AND DURABILITY" that states, "By this document [Decedent]
**578 intends to create a durable power of attorney effective upon, and only during, any period of mental incompetence." See Watson , 407 S.C. at 455, 756 S.E.2d at 161 ("Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." (quoting Jordan , 311 S.C. at 230, 428 S.E.2d at 707 ). During the circuit court's hearing, White Oak conceded that it was questioning Decedent's physical disability, not his mental competence, and White Oak does not raise the issue of Decedent's mental competence on appeal.
The medical evidence in the record supports White Oak's concession. Decedent's medical admission forms at White Oak indicate Decedent was alert and oriented to time, place, and situation. The admission forms also evidence Decedent's correct answers to questions about his location, his age, his birthday, the current date and year, and current and past presidents. Decedent's mental status evaluation indicated his mental *88 functioning was intact. We find there is ample evidence to support the circuit court's factual finding that Decedent was mentally competent at the time Stott signed the Arbitration Agreement. See Timmons , 380 S.C. at 595, 671 S.E.2d at 104 ("[A] circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports those findings."). Because Decedent was mentally competent, we find Stott's durable health care power of attorney was not effective to authorize her to sign the Agreement on Decedent's behalf.
Because we find Decedent was mentally competent to sign the Arbitration Agreement, we affirm the circuit court's decision that Stott did not have authority under her durable health care power of attorney to sign the Arbitration Agreement. Because neither power of attorney was effective to grant Stott the authority to sign the Arbitration Agreement on Decedent's behalf, we find White Oak is unable to compel arbitration of Stott's claims under the Arbitration Agreement.
CONCLUSION
Accordingly, the decision of the circuit court is
AFFIRMED.
GEATHERS and HILL, JJ., concur.

On May 11, 2012, Decedent executed a durable power of attorney for finance and a durable health care power of attorney, both of which authorized Stott to serve as his attorney-in-fact. The durable power of attorney for finance was recorded on January 8, 2013. The durable health care power of attorney was never recorded.

Paragraph one of the Arbitration Agreement states, "All monetary claims between the parties of $25,000.00 or more will be resolved by arbitration and will be subject to the terms and provisions of this Agreement."

407 S.C. 346, 755 S.E.2d 450 (2014).

The General Assembly replaced section 62-5-501 with South Carolina's Uniform Power of Attorney Act (the Act), which became effective January 1, 2017. See S.C. Code Ann. § 62-8-101 through -403 (Supp. 2018). Although section 62-8-109(c) of the Act also requires durable powers of attorney to be recorded, section 62-8-403(c) of the Act states, "[T]he applicable law in effect before the effective date of this act applies to a power of attorney created or restated before the effective date of this act." Both of the powers of attorney at issue in this case were executed before January 1, 2017; therefore, we apply the previous version of the statute in effect at the time of the execution of the powers of attorney.

The only exception to this rule is the authorization for health care records under the Health Insurance Portability and Accountability Act (HIPAA). See § 62-5-504(D).