**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Orveletta Alston as Personal Representative of the Estate of Willie Earl Alston, Sr., Respondent,

v.

Conway Manor, LLC, Raymond Tiller, and John and Jane Does 1-10, Appellants.

Appellate Case No. 2018-000188

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge

Unpublished Opinion No. 2021-UP-105
Heard October 13, 2020 – Filed March 31, 2021

**AFFIRMED**

W. McElhaney White, of Holcombe Bomar, PA, of Spartanburg, for Appellants.

Ernest Latony Dessausure, of Dessausure Law Firm of Columbia; and Daniel Nathan Hughey, Bradley Hunter Banyas, and Arthur Stuart Hudson all of Hughey Law Firm, LLC, of Mount Pleasant; all for Respondent.

**PER CURIAM:** On December 17, 2015, Willie Earl Alston was admitted to Conway Manor, a long-term care facility. Mr. Alston suffered from a history of

stroke and Alzheimer's disease, could not get out of bed, and used a wheelchair for mobility. At the time of his admission, two physicians completed a form certifying Mr. Alston was "not able to comprehend the Resident's Rights and Responsibilities of this facility." The two physicians further certified Mr. Alston was "not able to make Health Care Decisions (including Advance Directives)." While at Conway Manor, Mr. Alston developed pressure ulcers, which became infected. His health declined, and he died on April 22, 2016.

The personal representative of Mr. Alston's estate, Orveletta Alston (Wife), filed wrongful death and survival actions alleging Appellants were "negligent, careless, grossly negligent, [and] reckless" in providing care to Mr. Alston. Appellants timely answered, denying liability. On June 21, 2017, Appellants moved to stay the matter and compel arbitration, relying on arbitration clauses found in Mr. Alston's Admission Agreement and a separate "Resident and Facility Binding Arbitration Agreement" completed by Mr. Alston's daughter, Kimberly Alston-Wood (Daughter). Although the Arbitration Agreement is undated, the affidavit of Conway Manor's administrator, Raymond Tiller, indicates Daughter executed both documents on the day of Mr. Alston's admission to the facility. Following a hearing, the circuit court denied the motion to compel arbitration.

Appellants contend the circuit court erred in denying the motion to compel arbitration because (1) Daughter had the capacity to enter the Admission Agreement for Mr. Alston under both the Adult Health Care Consent Act and the South Carolina Bill of Rights for Residents of Long Term Care Facilities; (2) Wife is equitably estopped from asserting claims founded in duties arising from the Admission Agreement while simultaneously attempting to disclaim its arbitration provision; (3) Mr. Alston was the intended and direct beneficiary of the Admission Agreement; and (4) the Federal Arbitration Act mandates arbitration.[1] We affirm. The Admission Agreement contained an optional arbitration clause, stating:

---

[1] Appellants further contend the circuit court erred in failing to order arbitration because the Admission Agreement and Arbitration Agreement merged. We find this argument unpreserved because Appellants specifically disclaimed any merger argument before the circuit court, explaining, this is "a case where there is no argument about a merger; it is one agreement." *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n issue . . . must have been raised to and ruled upon by the [circuit] judge to be preserved for appellate review."); *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) ("An issue conceded in a lower court may not be argued on appeal.").

**Optional Arbitration Clause:** Any action, dispute, claim or controversy of any kind (tort, contract, equitable or statutory, including but not limited to claims or violations of Resident's Rights) now existing or hereafter arising between the parties, in anyway arising from or relating to this Agreement governing the Resident's stay a[t] the Facility, shall be resolved by binding arbitration. Such binding arbitration shall be governed by the provisions of the South Carolina Arbitration Code. As appropriate and in the event that the South Carolina Arbitration Code is deemed to not apply, binding arbitration shall be governed by the Federal Arbitration Act. **OPTIONAL: If the parties do not agree to this Arbitration Clause, please mark with an X to void this clause only. I have X this clause ___ initial.**

Resident and or Responsible Party has read or been read and understands and agrees to all terms and conditions of this agreement unless specifically noted on the agreement.

Conway Manor's admissions coordinator met with Daughter to execute Mr. Alston's admission paperwork. Although Wife was Mr. Alston's legal representative, Daughter signed both the Admission Agreement and the Arbitration Agreement as the "Responsible Party." However, Daughter left blank the following section of the Admission Agreement seeking confirmation of the signatory's capacity to serve as the Responsible Party:

Responsible Party is acting as:      ___Conservator
                                    ___Power of Attorney
                                    ___Relative (state relationship)
                                    ___Other: _____

The final sentence of the Admission Agreement requires, "The legal designee shall supply the Facility with a copy of the Power of Attorney, Durable Power of Attorney, Guardianship, or other legal document, which permits him/her to act as legal designee for the Resident."

**I. Adult Health Care Consent Act**

Appellants argue the circuit court erred in failing to order arbitration because Daughter had authority under South Carolina law to sign the Admission Agreement containing the arbitration provision.  We disagree.

We find Daughter lacked legal authority under the Adult Health Care Consent Act (AHCCA) to contractually bind her father (or his beneficiaries) to the arbitration provision of the Admission Agreement.  The AHCCA specifically allows a representative to make decisions for a patient regarding medical procedures and the treatment of human disease and ailments; it does not address the capacity of such a representative to bind the patient to an arbitration agreement.  *See* S.C. Code Ann. § 44-66-30(A) (2018 & Supp. 2020) (providing the order of priority for persons authorized make "decisions concerning [the] health care" of a patient who is unable to consent); *Coleman v. Mariner Health Care, Inc.*, 407 S.C. 346, 354, 755 S.E.2d 450, 454 (2014) ("The separate arbitration agreement concerned neither health care nor payment, but instead provided an optional method for dispute resolution between Facility and Decedent or Sister should issues arise in the future.  Under the Act, Sister did not have the capacity to bind Decedent to this voluntary arbitration agreement.").  Further, the AHCCA designates that a spouse has priority over an adult child, and Mr. Alston had a living spouse.  § 44-66-30(A) ("Where a patient is unable to consent, decisions concerning his health care may be made by the following persons in the following order of priority: . . . (3) a spouse of the patient . . . (4) an adult child of the patient . . . .").  The AHCCA's "order of priority" authorizes a lower priority individual to make health care decisions for a patient only when no higher priority individual exists.  *See Coleman*, 407 S.C. at 351, 755 S.E.2d at 453 ("Sister was authorized to make health care decisions for Decedent *only because* Decedent had no guardian or attorney-in-fact, no other individual had statutory priority, and she had neither a spouse, a parent, nor an adult child.  As the individual *with priority* under 44-66-30(A), Sister was authorized to 'make decisions concerning Decedent's health care . . . .'" (emphases added) (quoting § 44-66-30(A))).[2]  Thus, pursuant to the plain language of the AHCCA, Daughter lacked authority to enter the contracts addressing Mr. Alston's health care.

Even if the AHCCA authorized Daughter to make health care decisions on Mr. Alston's behalf, the arbitration clause in the Admission Agreement is an optional

_____

[2] The AHCCA has been amended since the time of Mr. Alston's admission to Conway Manor; however, these amendments did not change the order of priority for persons authorized to make health care decisions for a person unable to give consent.

method for dispute resolution, not a traditional health care decision contemplated by the AHCCA.  In *Coleman*, the supreme court recognized "the [AHCCA] contemplates that the surrogate's authority extends primarily to traditional health care decisions, and only secondarily to the financial decisions necessitated by those decisions."  407 S.C. at 353, 755 S.E.2d at 454; *see also Thompson v. Pruitt Corp.*, 416 S.C. 43, 50, 784 S.E.2d 679, 683 (Ct. App. 2016) ("The [AHCCA] confers authority on a health care surrogate to consent on the patient's behalf 'to the provision or withholding of health care' and to make financial decisions obligating the patient to pay for the medical care provided." (quoting *Coleman*, 407 S.C. at 351–52, 755 S.E.2d at 453)).  The arbitration provision in this case was optional and assent to it was not required for Mr. Alston's admission to the facility or his access to healthcare there.  Moreover, under both the statutory priority scheme and our supreme court's analysis in *Coleman*, Daughter lacked authority to bind Mr. Alston to arbitration.  *See Coleman*, 407 S.C. at 354, 755 S.E.2d at 454; *see also Stott v. White Oak Manor, Inc.*, 426 S.C. 568, 575, 828 S.E.2d 82, 86 (Ct. App. 2019) (holding White Oak Manor was unable to compel arbitration of resident's claims under an arbitration agreement because the surrogate decision maker lacked authority to sign the arbitration agreement); *Wilson v. Willis*, 426 S.C. 326, 337, 827 S.E.2d 167, 173 (2019) ("Even the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so." (quoting *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App. 2011))).

Nor did the South Carolina Bill of Rights for Residents of Long Term Care Facilities (the Bill of Rights) confer statutory authority on Daughter to bind Mr. Alston to arbitration.  The purpose of the Bill of Rights is "to preserve the dignity and personal integrity of residents of long-term care facilities through the recognition and declaration of rights safeguarding against encroachments upon each resident's needs for self-determination."  S.C. Code Ann. § 44-81-20 (2018); *see also* W. Andrew Arnold & Brian E. Arnold, *Helping Society's Most Vulnerable:  Nursing Home Litigation*, 14 S.C. Law. 28, 30 (March 2003) ("Essentially, this statute provides that 'each resident must be treated with respect and dignity . . . ' and specifically protects, among other things, a resident's right to choose a personal physician, to be free from physical and chemical restraints and to privacy." (quoting § 44-81-40 (2001))).

## II.  Equitable Estoppel

Appellants argue the circuit court erred in failing to order arbitration because Wife was estopped from denying the validity of the arbitration provision while

simultaneously asserting claims founded in the duties arising out of other sections of the Admission Agreement. We disagree.

Wife neither relies on duties stated in the Admission Agreement as a basis for her claims nor asserts a breach of the Admission Agreement as a cause of action. *See Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 563, 813 S.E.2d 292, 302 (Ct. App. 2018) ("[E]ven if the Admission Agreement and Arbitration Agreement merged, because Respondents are not suing for a breach of the Admission Agreement, they are not attempting to enforce that agreement. Therefore, the circuit court did not err in finding equitable estoppel did not bar Respondents' claims."). Rather, the causes of action set forth in the complaint in this case rely on alleged breaches of common law, regulatory, and statutory duties. *See Weaver v. Brookdale Senior Living, Inc.*, 431 S.C. 223, 230, 847 S.E.2d 268, 272 (Ct. App. 2020) (explaining equitable estoppel "estops a nonsigner from refusing to comply with an arbitration provision of a contract if (1) the nonsigner's claim arises from the contractual relationship, (2) the nonsigner has 'exploited' other parts of the contract by reaping its benefits, and (3) the claim relies solely on the contract terms to impose liability").

## III. Third-Party Beneficiary

Our review of the record reveals the circuit court correctly held Mr. Alston was not a third-party beneficiary to an arbitration agreement because the Agreement "was never valid." Daughter lacked the authority to execute the agreements on Mr. Alston's behalf; thus, no valid contract was formed, and any third-party beneficiary assertion fails. *See Thompson*, 416 S.C. at 57, 784 S.E.2d at 687 ("[T]here can be no third-party beneficiary unless a valid contract exists. Here, Son was not authorized to execute the [Arbitration Agreement] on Mother's behalf. Therefore, she could not be the third-party beneficiary of the alleged [Arbitration Agreement] between herself and Appellants." (citation omitted)).

## IV. Federal Arbitration Act

Appellants argue the circuit court erred in failing to order arbitration pursuant to the FAA because Daughter had both statutory and regulatory authority to enter the Admission Agreement and Wife's claims fall within the scope of the arbitration provision. Because Daughter lacked the authority necessary to execute the Agreement, there is no valid arbitration provision to enforce under the FAA. *See Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 24, 644 S.E.2d 663, 668

(2007) ("[A]rbitration is a matter of contract law and is available only when the parties involved contractually agreed to arbitrate.").

**Conclusion**

The circuit court's denial of Appellants' "Motion to Stay Action and Compel Arbitration and for Protective Order" is

**AFFIRMED.**

**LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.**