**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Grace Gray, Individually and as Wife of Willie J. Gray, deceased, and as Personal Representative of The Estate of Willie J. Gray, deceased, Respondent,

v.

PruittHealth-North Augusta, LLC; UHS Pruitt Corporation a/k/a PruittHealth, Inc.; PruittHealth Consulting Services, Inc.; United Health Services of South Carolina, Inc.; John Doe, and Richard Roe Corporation, Appellants.

Appellate Case No. 2019-001102

———

Appeal From Aiken County
R. Keith Kelly, Circuit Court Judge

———

Unpublished Opinion No. 2024-UP-292
Submitted May 2, 2022 – Filed August 7, 2024

———

**REVERSED AND REMANDED**

———

Joshua Steven Whitley, of Smyth Whitley, LLC, of Charleston, for Appellants.

Kenneth Luke Connor, Christopher Caleb Connor, and Anne Katharine Moore, of Connor & Connor, LLC, of

Aiken, and Allen Keith McAlister, Jr., of Hawk Law Group, of Aiken, all for Respondent.

_____

**MCDONALD, J.:** This is an appeal from the circuit court's order denying a motion to dismiss and to compel arbitration filed by PruittHealth-North Augusta, LLC; UHS Pruitt Corporation a/k/a PruittHealth, Inc.; Pruitt Health Consulting Services, Inc.; and United Health Services of South Carolina, Inc. (collectively, Appellants). Appellants assert the circuit court erred in finding the Arbitration Agreement executed by Tamara Donnelle Gray (Daughter) on behalf of her father, Willie James Gray, is unenforceable. Because the power of attorney Gray executed while hospitalized in Georgia gave Daughter the authority necessary to execute the Arbitration Agreement on his behalf, we reverse and remand for arbitration.

**Facts and Procedural History**

On July 27, 2017, Gray was involved in a car accident and transported to University Hospital in Augusta, Georgia; he complained of bilateral arm weakness and pain. Gray was diagnosed with an acute spinal cord injury and underwent surgery for spinal cord decompression and a cervical fusion. He developed postoperative complications, including but not limited to a stroke, and was eventually diagnosed with quadriparesis and acute respiratory failure necessitating ventilation. Although Gray was seemingly oriented, he had only a limited ability to communicate.

On August 10, 2017, during his Georgia hospital stay, Gray executed a power of attorney appointing Daughter or his wife as his "true and lawful agent and attorney-in-fact." He also completed a Georgia Advance Directive for Health Care (HCPOA) appointing Daughter as his health care agent and potential guardian and Wife as his "back-up health care agent."

Gray spent a total of thirty-four days at University Hospital before he was transferred to Select Specialty Hospital for continuation of care and ventilator weaning. He was then transferred to PruittHealth-North Augusta (PruittHealth) for short-term rehabilitation.[1] As part of the admissions process, Daughter executed various documents on Gray's behalf, including the Arbitration Agreement at issue.

_____

[1] Gray planned to transfer to a nursing facility near Daughter's Pennsylvania home once his rehabilitation was complete.

While in PruittHealth's care, Gray developed a Stage IV sacral decubitus ulcer and suffered other pressure ulcerations, an infection, sepsis, malnutrition, and dehydration. On October 26, 2017, PruittHealth deemed Gray stable for discharge and arranged to transfer him to Chester Valley Nursing Facility in Pennsylvania. However, during transport, EMS found Gray was unstable and his blood sugars were dangerously out of range. Thus, EMS diverted to the nearest hospital in Wilson, North Carolina.

Wilson Emergency Department staff diagnosed Gray with severe sepsis and admitted him. He was hospitalized for ten days and underwent wound therapy, including two debridements of an abscessed sacral decubitus ulcer. Wilson Medical Center discharged Gray on November 5, with a diagnosis of sacral decubitus ulcer with associated cellulitis and abscess (following extensive debridement), sepsis, acute metabolic encephalopathy, and sinus tachycardia.

Gray then continued his journey to Pennsylvania, where he was admitted to Chester Valley on November 6, 2017. Gray received stringent wound care, and a wound VAC was applied to his sacral wound. Gray died on June 19, 2018.

Wife filed a notice of intent to file suit (NIF), along with the required expert witness affidavit, and served Appellants. Appellants moved to dismiss and to compel arbitration, which Wife opposed.

Following a hearing, the circuit court denied Appellants' motions, finding Gray's power of attorney (POA) "did not confer the necessary authority to execute an arbitration agreement on Decedent's behalf" because it was not identified as a general durable power of attorney and did not confer authority upon Daughter to enter contracts generally, to enter releases on Gray's behalf, or to waive his constitutional right to a jury trial. The circuit court further noted the POA did not include the "catch-all provision giving the attorney-in-fact the authority 'to sign any and all releases or consent required.'" Finally, the circuit court found that even if Daughter had actual or apparent authority to sign, the agreement was "unenforceable against [Gray's] wrongful death statutory beneficiaries under South Carolina contract law defenses." The circuit court denied Appellants' Rule 59(e), SCRCP, motion to reconsider, and Appellants timely appealed.

**Analysis**

"Arbitrability determinations are subject to de novo review."  *Arredondo v. SNH SE Ashley River Tenant, LLC*, 433 S.C. 69, 74, 856 S.E.2d 550, 553 (2021) (quoting *Johnson v. Heritage Healthcare of Estill, LLC*, 416 S.C. 508, 512, 788 S.E.2d 216, 218 (2016)).  "The litigant opposing arbitration bears the burden of demonstrating that he has a valid defense to arbitration."  *Id.* at 75, 856 S.E.2d at 553 (quoting *Johnson*, 416 S.C. at 512, 788 S.E.2d at 218).

Appellants argue the circuit court erred in finding the Arbitration Agreement unenforceable on the basis that neither the POA nor HCPOA provided Daughter the authority necessary to execute the Agreement on Gray's behalf.  We agree.

"A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal.  The written authorization itself is the power of attorney."  *Stott v. White Oak Manor, Inc.*, 426 S.C. 568, 573, 828 S.E.2d 82, 85 (Ct. App. 2019) (quoting *Watson v. Underwood*, 407 S.C. 443, 454, 756 S.E.2d 155, 161 (Ct. App. 2014)).  "Our courts have looked to contract law when reviewing actions to set aside or interpret a power of attorney." *Arredondo*, 433 S.C. at 75, 856 S.E.2d at 553 (quoting *Stott*, 426 S.C. at 577, 828 S.E.2d at 87).  "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties, and, in determining that intention, the court looks to the language of the contract."  *Id.* at 75, 856 S.E.2d at 553-54 (quoting *Stott*, 426 S.C. at 577, 828 S.E.2d at 87).  "When the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect."  *Id.* at 75, 856 S.E.2d at 554 (quoting *Stott*, 426 S.C. at 577, 828 S.E.2d at 87).  Therefore, we must consider the validity and language of the POA in determining whether Daughter had authority to execute the Arbitration Agreement on Gray's behalf.[2]

---

[2] By statute, we look to Georgia law in analyzing the validity of the POA Gray executed while hospitalized in Georgia.  *See* S.C. Code Ann. § 62-8-107 (providing "[t]he meaning and effect of a power of attorney is determined by the law of the jurisdiction indicated in the power of attorney and, in the absence of an indication of jurisdiction, by the law of the jurisdiction in which the power of attorney was executed"); Ga. Code Ann. § 10-6B-5 (2017) (providing a POA "shall be: (1) Signed by the principal or by another individual in such principal's presence at the principal's express direction; (2) Attested to in the presence of the principal by a competent witness who is not also named as an agent in the [POA] being attested; and (3) Attested as set forth in [Ga.] Code § 44-2-15 in the presence of the

Under the South Carolina Uniform Power of Attorney Act (the Act),[3] a "[p]ower of attorney" is a "writing or other record that grants authority to an agent to act in place of the principal." S.C. Code Ann. § 62-8-102(7) (2017); *see also Watson*, 407 at 454, 756 S.E.2d at 161 ("'A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal. The written authorization itself is the power of attorney.'" (quoting *In re Thames*, 344 S.C. 564, 569, 544 S.E.2d 854, 856 (Ct. App. 2001))). "A power of attorney classified as 'durable' contains language establishing the principal's intent that the attorney-in-fact or agent's authority be exercisable during periods of the principal's physical or mental incapacity." *Stott*, 426 S.C. at 574, 828 S.E.2d at 85; *see also Gaddy v. Douglass*, 359 S.C. 329, 344 n.11, 597 S.E.2d 12, 20 n.11 (Ct. App. 2004) ("'Durable' is a term of art signifying that a power of attorney survives the principal's disability.").

Respondent references the power of attorney Gray executed as a "General POA for Finance," but the instrument itself contains no such title. The instrument Gray executed—in the presence of the witness and notary required by Georgia law—is untitled, but provision five specifically states,

> This is a durable power of attorney, and it shall NOT be terminated by my incompetency. This is a power to act as attorney-in-fact for me, and if I subsequently become incompetent, it shall remain in force until such time as a guardian or receiver shall be appointed for me or until some other judicial proceeding shall terminate the power.

Thus, the circuit court erred in finding "[t]his document is titled 'Power of Attorney' and is not identified [as] a General Durable Power of Attorney." *See Arredondo*, 433 S.C. at 80, 856 S.E.2d at 556 (noting "the mere title of the document" was not dispositive as to the powers granted to Arredondo "beyond the plain meaning of the provisions contained in the document").

In the POA's opening paragraph, Gray appointed Daughter (or Wife) as

---

principal" by a notary public or other officer authorized to attest registrable instruments).

[3] S.C. Code Ann. §§ 62-8-101 to -403 (2017).

[his] true and lawful agent and attorney-in-fact, to do and
perform in [his] name and behalf any and all things that
she may think desirable or proper in as full and complete
a manner as [he] could do if present and acting in person,
including specifically, but without limitation, upon the
foregoing generality of statement[.]

The document then sets out a number of specific acts the attorney-in-fact may take
"without limitation."  Later in the document, Gray stated:

I hereby specifically ratify and confirm all that my said
attorney-in-fact shall do at any time and from time to
time by virtue of these presents, which shall cover and
include the right to do any act or thing that I might do as
above set forth, in the same manner and to the same
effect as if I were personally present and acting.

Our review of the record reveals: (1) Daughter was appointed Gray's
attorney-in-fact through the Georgia POA; (2) Daughter assisted with Gray's
admission to Appellants' facility; and (3) Daughter signed both the Admission
Agreement and Arbitration Agreement as Gray's representative.  Although
Daughter does not deny she signed Gray's admitting documents, she claimed in her
affidavit opposing the motion to compel arbitration that she did not recall signing
the Arbitration Agreement.  In the same affidavit, Daughter stated she was "led to
believe the documents [she] was asked to sign were necessary for admission to the
facility."

The Arbitration Agreement Daughter signed is a five-page document with the
following language in bold on the first page:

### I. <u>Arbitration</u>

<u>**THE PATIENT AND THE HEALTHCARE
CENTER UNDERSTAND AND ACKNOWLEDGE
THAT THIS AGREEMENT IS A VOLUNTARY
AGREEMENT TO SUBMIT FOR RESOLUTION
BY ARBITRATION ANY DISPUTES THAT MAY
ARISE IN THE FUTURE BETWEEN THE
PARTIES.  THE PARTIES FURTHER
UNDERSTAND AND ACKNOWLDGE THAT, AS**</u>

**TO ALL DISPUTES THAT ARE GOVERNED BY THIS AGREEMENT, EACH OF THE PARTIES IS WAIVING THE RIGHT TO TRIAL BY JURY, AND INSTEAD, ANY DISPUTES BETWEEN THE PARTIES SHALL BE RESOLVED THROUGH BINDING ARBITRATION.**

By affidavit, Daughter further claimed she was not informed she was waiving the right to a jury trial; she was not informed she could consult an attorney before signing; and she did not discuss the admission documents with Gray before signing them. Yet, the signature page of the Arbitration Agreement specifically notes the "Patient/Resident has the right to seek legal counsel" concerning the Arbitration Agreement, the signing of the Agreement "is not a precondition to admission," and the Agreement may be revoked within thirty (30) days of signing. Moreover, the Agreement contains the following bold language above the signature area:

> **THIS AGREEMENT GOVERNS IMPORTANT LEGAL MATTERS. PLEASE READ THE AGREEMENT IN ITS ENTIRETY BEFORE SIGNING. THE PARTIES UNDERSTAND AND ACKNOWLEDGE THAT, AS TO ALL DISPUTES THAT ARE GOVERNED BY THIS AGREMEENT, EACH OF THE PARTIES IS WAIVING THE RIGHT TO TRIAL BY JURY, AND INSTEAD DISPUTES BETWEEN THE PARTIES SHALL BE RESOLVED THROUGH ARBITRATION.**

We find Daughter and PruittHealth entered an enforceable arbitration agreement. Gray's general durable power of attorney gave Daughter the authority to enter the Arbitration Agreement—and the other admission documents—on Gray's behalf. *See Hackworth v. Bayview Manor*, 2023-UP-096 (S.C. Ct. App. filed March 15, 2023), *reh'g denied* (June 5, 2023), *cert. denied* (March 24, 2024) (reversing and remanding for arbitration where general durable power of attorney gave signer authority to enter agreements on the patient's behalf); *Arredondo*, 433 S.C. at 75-76, 856 S.E.2d at 554 (emphasizing the analysis of whether a party has been granted authority to enter an arbitration agreement on behalf of another "does not turn upon the presence or absence of an explicit reference to arbitration or arbitration agreements in the powers of attorney").

The circuit court's alternate holding does not permit a different result. In the order denying the motion to compel arbitration, the circuit court found:

> [E]ven if Daughter had actual or apparent authority/agency to sign the Arbitration Agreement on behalf of Decedent, the Arbitration Agreement is unenforceable against the Decedent's wrongful death statutory beneficiaries under South Carolina contract law defenses. The Arbitration Agreement neither covers the wrongful death statutory beneficiaries' claims within the scope of the agreement nor was the Agreement signed by an individual who had authority to bind the statutory beneficiaries.

We are unclear what "contract law defenses" are referenced here, and no case or statutory provision is cited in the order. However, in *Dean v. Heritage Healthcare of Ridgeway, LLC*, our supreme court explained "courts may not refuse to compel arbitration simply because a wrongful death claim is involved." 408 S.C. 371, 378 n.3, 759 S.E.2d 727, 731 n.3 (2014) (citing *Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530 (2012) (per curiam) (invalidating West Virginia's policy of refusing to refer wrongful death claims against a nursing home to arbitration)).[4]

**Conclusion**

For the foregoing reasons, the circuit court's order denying Appellants' motion to dismiss and compel arbitration is

**REVERSED AND REMANDED.**[5]

**THOMAS and HEWITT, JJ., concur.**

---

[4] We find Respondent's preservation challenge on this point lacks merit. Appellants argued *Dean* to the circuit court at the hearing on their motion to dismiss and compel arbitration, and they cite *Dean* throughout their briefing in support of their position on appeal. Citing *Dean* and *Marmet*, Appellants further argue in their initial brief that the circuit court's "secondary ruling directly conflicts with South Carolina state law as well as federal law related to this issue."

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.